In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-1503

MARK A. LEE,

*Plaintiff-Appellant,*

*v.*

CITY OF CHICAGO,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 CV 6751—**Charles P. Kocoras**, *Chief Judge.*

ARGUED OCTOBER 28, 2002—DECIDED MAY 22, 2003

Before KANNE, DIANE P. WOOD, and EVANS, *Circuit Judges.*

KANNE, *Circuit Judge.* Mark A. Lee was struck by stray gunfire while driving his car down a Chicago, Illinois street on June 9, 2001. In hopes of tracking down the shooter, Chicago police officers promptly impounded Lee's car so that they could later search for, retrieve, and analyze any bullets that might have become lodged in it. Ten days later on June 19, 2001, the City of Chicago informed Lee that they no longer needed his car for evidentiary purposes. But in a notice entitled, "Vehicle on Hold for Investigation," which the City had sent Lee two days after the shooting and impoundment, it had informed him that before he could retrieve his car, Lee either had to pay all applica-

ble towing and storage fees or request a hearing. If he didn't pay or pursue this hearing process within thirty days of the date of the car's impoundment, the City told him it could "dispose of" his car—a euphemism for either crushing it or selling it at auction.

Lee wanted to retrieve his car as soon as possible, but he was unable to pay the amount the City demanded. So, he got a lawyer, and through him was able to negotiate an acceptable payment amount. But when he retrieved his car, thirty-one days after it had been impounded, he found that the City had spray painted large, bright-red, six-digit inventory numbers on its hood and its passenger's and driver's side panels. The City didn't pay for this damage, nor did it offer to discount or refund the money Lee had just paid the City to retrieve his newly redesigned car.

Lee sued. On August 29, 2001, Lee filed a complaint in federal court against the City of Chicago pursuant to 42 U.S.C. § 1983 alleging that the City had violated his rights under the Fourth Amendment to be free from unreasonable searches and seizures and under Fourteenth Amendment substantive-due-process principles in two ways: (1) by requiring him, as the owner of a vehicle impounded for evidentiary purposes, to pay towing and storage fees, and (2) by spray-painting inventory numbers on his car without consent and without compensation. Lee also brought pendant state-law claims for implied bailment, trespass, and conversion. Lee filed an amended complaint on behalf of two classes of similarly situated individuals (those who had to pay fees and those whose cars were repainted).

The City moved to dismiss the amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The district court granted the motion on January 30, 2002, holding that Lee lacked standing to challenge his car's spray painting because he presented no evidence that he

maintained a cognizable property interest in the car at the time it was painted, and that he could not make out a claim under either the Fourth or Fourteenth Amendment regarding the City's practice of charging towing and storage fees. Lee appeals. We reverse in part, holding that Lee has satisfied his burden in establishing facts sufficient to withstand a Rule 12(b)(1) motion and to confer standing to challenge the City's spray painting of his car, but affirm, on alternate grounds, the district court's dismissal under Rule 12(b)(6) of the claims challenging the City's practice of charging towing and storage fees.

## ANALYSIS

### I.   *Rule 12(b)(6)*

We examine a district court's grant of a Rule 12(b)(6) motion *de novo*. *Johnson v. Martin*, 943 F.2d 15, 16 (7th Cir. 1991). In reviewing the grant of the motion, we view the complaint in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from those allegations in his or her favor. *Id.* A motion to dismiss is to be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

The City's Rule 12(b)(6) arguments addressed only the City's practice of charging towing and storage fees to car owners whose cars had been impounded for investigatory purposes. We therefore address Lee's two claims under the Fourth and Fourteenth Amendment challenging this practice separately and in turn.

### A.   *Fourth Amendment*

The parties do not dispute that the initial impoundment of Lee's car for evidentiary purposes was a reasonable

seizure. Nor does Lee claim that the delay between the City's seizure of his car and the City's completion of its search rendered that subsequent search unreasonable. Rather, Lee claims that the City's refusal to return his car to him unless he paid the car's towing and storage fees or requested a hearing, when the City had already concluded its search, constituted an additional "seizure" within the meaning of the Fourth Amendment.[1] Alternatively, he argues that the otherwise reasonable seizure of his car became unreasonable when the government's law-enforcement interest in his car ceased but his possessory interest in the property survived. In either case, he argues the continued possession of the property by the government became a meaningful interference with his possessory interest and, thus, must be interpreted as a Fourth Amendment seizure. Lee then argues that this failure-to-return seizure cannot be deemed reasonable when its sole purpose was to enforce a demand, under threat of loss or destruction of the car, for payment of the car's towing and storage—a cost of law enforcement Lee argues should be spread among the public as a whole, who all both bear the risk of violent crime and receive the benefits of crime solved, rather than assessed to him alone, the unfortunate victim of this random occurrence.

In response, the City argues that when it concluded its investigation, the car became available for retrieval. At that moment, all "seizure" of the car had in effect ended. The subsequent conditioning of the car's release upon the payment of fees or the successful pursuit of a hearing is, in the City's view, a mere dispute about money—that is, how much the City was entitled to charge Lee for towing

---

[1] Of course, Lee recognizes that the amendment does not apply to the City's actions directly, but rather *vis-a-vis* its incorporation through the due process clause of the Fourteenth Amendment. *See generally Mapp v. Ohio*, 367 U.S. 643 (1961).

and storage—and does not raise Fourth Amendment concerns. Even if it did, the city argues that its policy of apportioning some of its law-enforcement costs of pursuing criminals to the victims who are most likely to benefit from that pursuit is reasonable.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures . . . ." U.S. CONST. amend. IV. In clarifying that the amendment addressed property interests in addition to privacy concerns, the Supreme Court defined the amendment's use of the term "seizure" as "some meaningful interference with an individual's possessory interests in [his] property." *Soldal v. Cook County*, 506 U.S. 56, 61 (1992) (citing *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). Whether, under this definition, a state actor's refusal to return once lawfully obtained property can amount to an unreasonable seizure, or, alternatively, transform a seizure from reasonable to unreasonable, is an issue of first impression in this Circuit, and to our knowledge has been addressed by only two other circuits—the Sixth, *see Fox v. Van Oosterum*, 176 F.3d 342, 351 (6th Cir. 1999), and the Second, *see United States v. Jakobetz*, 955 F.2d 786, 802 (2d Cir. 1992)—both of which held that when the police hold onto evidence longer than it is needed for investigatory purposes, the owner has no recourse under the Fourth Amendment.[2]

---

[2] The Tenth Circuit has noted that the continued deprivation of property may raise statutory or constitutional violations. *Davis v. Gracey*, 111 F.3d 1472, 1477 (10th Cir. 1997). It found support for potential statutory violations in provisions such as Federal Rule of Criminal Procedure 41(e), which allows a criminal defendant aggrieved by an unlawful search, seizure, or deprivation of property to petition for its suppression or return. *Id.* And

(continued...)

The Second Circuit reached this position with rather limited discussion in *Jakobetz*. 955 F.2d at 802. In that case, the prosecution sought to introduce photographic evidence that the New York City police department had retained from an earlier investigation involving unrelated charges against Jakobetz. After those initial, unrelated charges had been dropped, New York law directed the police to return the photos, which the police failed to do. On that basis, Jakobetz argued that the failure to return the photos constituted an unreasonable seizure and that the prosecution should therefore be barred from introducing the photos as evidence against him in the subsequent proceeding. The Second Circuit disagreed. It didn't "think that the 'seizure' alleged [was] one that deserve[d] the special protections provided by the fourth amendment," noting there was no authority for the contrary position. *Id.* At most, the court thought Jakobetz might be able to establish a violation of a statutory right. *Id.* The court went on to note that even if they were to find an unreasonable seizure, Jakobetz had failed to allege any wilful intent on the part of the police to retain the property unlawfully. And since the exclusionary rule seeks only to deter police misconduct, they could see no purpose in applying the rule. *Id.*

With more discussion than the Second Circuit's resolution of the issue in *Jakobetz*, a split panel of the Sixth

---

[2] (...continued)
the court recognized a potential First Amendment challenge should the state not conduct an adversarial proceeding within a certain time frame to determine whether the material was, in fact, obscene. *Id.* (citing *In re Search of Kitty's East*, 905 F.2d 1367, 1371, 1375 (10th Cir. 1990) (discussing the potential for First Amendment violations)). The court did not reach the issue of whether a constitutional challenge could arise under the Fourth Amendment. *Id.*

Circuit in *Fox* determined that a failure to return property would not constitute a Fourth Amendment seizure. *Fox*, 176 F.3d at 349-50. In the majority's view, the amendment protected only an individual's interest in *retaining* property against illegal government intrusion, rather than an interest in *regaining* possession of that property. *Id.* at 350. To reach this conclusion, the court largely relied upon a remark made by Justice Stevens in his concurrence in *Texas v. Brown*, a case in which a plurality of the Justices held that a warrantless seizure of a balloon from inside a vehicle was justified, even though its contents were not visible to the officer, where incriminating evidence sufficient to establish probable cause that the balloon contained contraband came into the plain view of an officer during the course of an investigatory stop. 460 U.S. 730, 744 (1983) (plurality opinion). Here is what Justice Stevens said there: "The [Fourth] Amendment protects two different interests of the citizen—the interest in *retaining* possession of property and the interest in maintaining personal privacy." *Id.* at 747 (Stevens, J., concurring) (emphasis added). Justice Stevens's point was that these two interests, possession and privacy, were separate, distinct, and protected by the amendment individually. In his view, circumstances could arise to diminish an individual's possessory interest in a closed container discovered in "plain view" during the course of an investigatory stop, justifying a warrantless seizure of the property to ensure against its loss or destruction, but could nevertheless leave the individual's privacy interest in the contents of that container undisturbed, therefore mandating that a warrant be obtained before opening that container and searching it. *Id.* at 749-50. This distinction between property and privacy interests, the Sixth Circuit in *Fox* noted, was later recognized by a majority of the Supreme Court in *Soldal*. *Fox*, 176 F.3d at 350 (citing *Soldal*, 506 U.S. at 62-63 (recognizing that the Fourth Amendment "protects property as well as privacy")). And since the *Soldal* majority

had cited Justice Stevens's *Brown* concurrence, the *Fox* court implied that the Court also had Justice Stevens's particular phrasing of that property interest in mind when defining the term "seizure" as a "meaningful interference with a possessory interest." *Id.* at 351.

Assigning precedential value to this phrasing is problematic. As an initial matter, there is little in Justice Stevens's concurring opinion in *Brown* to suggest that he had a temporal restriction in mind when he described the property interest. *Accord California v. Hodari D.*, 499 U.S. 621, 632-34 (1991) (Stevens, J., dissenting) (arguing against strict literal construction of the term "seizure"). To the contrary, the analysis is consistent with the notion that an individual's Fourth Amendment rights do not dissipate upon the loss of physical possession—at the very least, Justice Stevens believed an individual's privacy interests in their property may remain intact despite dispossession. And although the *Soldal* court may have cited Justice Stevens's *Brown* concurrence, as well as his majority opinion in *United States v. Jacobsen*, 466 U.S. 109, 113 (1984), for the proposition that the amendment serves to protect dual interests of privacy and possession, nothing in that opinion suggests that the adoption of the distinction subsumed as well the conception of that possessory interest as one of retention.

But this is not to suggest that there aren't other justifications for reaching the same conclusion as the *Fox* and *Jakobetz* courts. First, we cannot overlook the text of the amendment, which states that it protects the right "to be secure" in one's home, person, or effects. That language suggests a *state of being* that is protected against intrusion by unlawful government action. It then could be argued that once that state has been disturbed by an act of dispossession, the individual is no longer secure in his possessory interest within the meaning of the amendment. Moreover, at the time of the amendment's drafting, the

word "seizure" was defined as a temporally limited act, one involving the "confiscation or forcible taking possession (of land or goods); a sudden and forcible taking hold." OXFORD ENGLISH DICTIONARY (2d ed. 1989) (quoting *10th Rep. Hist. MSS. Comm.* App. v. 516 (1701) ("His Majestie Attornie-Generall . . . moved . . . for a seizure of the premises."), and BURKE CORR. IV 143 (1793) ("The seizure of the estates of the church.")); *see also California v. Hodari D.*, 499 U.S. 621, 624 (1991) ("From the time of the founding to the present, the word 'seizure' has meant a 'taking possession.'" (quotations omitted)); *Thompson v. Whitman*, 85 U.S. (18 Wall.) 457, 471 (1873) ("A seizure is a single act, and not a continuous fact."). Thus, Justice Stevens's description—even if lacking in independent precedential value—is consistent with this literal reading.

Besides the textualist argument, there is precedent in this Circuit that requires us to restrict Fourth Amendment seizures temporally. In *Wilkins v. May*, we rejected the idea that a Fourth Amendment seizure can continue beyond the point of arrest to govern excessive-force claims brought by pretrial detainees.[3] 872 F.2d 190, 194 (7th Cir. 1989); *see also Reed v. City of Chicago*, 77 F.3d 1049, 1052 n.3 (7th Cir. 1996) (reaffirming *Wilkins* on this point and rejecting the notion that Justice Ginsburg's endorsement of the continuing-seizure concept in *Albright v. Oliver*, 510 U.S. 266, 276-80 (1994) (Ginsburg, J., concur-

---

[3] In rejecting this concept of a "continuing seizure," we are joined by the Fourth, Fifth, and Eleventh Circuits. *See, e.g.*, *Riley v. Dorton*, 115 F.3d 1159, 1163 (4th Cir. 1997) (citing *Brothers v. Klevenhagen*, 28 F.3d 452, 456 (5th Cir. 1994), and *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996)). The Fifth Circuit has recently rejected the argument advanced by pretrial detainees that being charged fees in conjunction with bail release constitutes an unreasonable seizure. *Broussard v. Parish of Orleans,* 318 F.3d 644, 662 (5th Cir. 2003).

ring), was controlling precedent).[4] Two practical reasons led us to reject the notion of a "continuing seizure." First, the "considerations that have been used to give meaning to the key substantive term in the amendment—'unreasonable'— are largely inapplicable once the arrest has taken place and the arrested person has been placed securely in custody." *Wilkins*, 872 F.2d at 193. We noted that the usual issue for Fourth Amendment cases in general was whether probable cause existed, and in a typical Fourth Amendment excessive-force case it was the related issue of "whether the force used to seize the suspect was excessive in relation to the danger he posed." *Id.* (citations omitted). Neither of these issues would be presented when a suspect was already lawfully in custody. *Id.* As such, the "text, history, and judicial interpretations" of the Fourth Amendment would prove unhelpful in resolving the cases. *Id.* at 194.

Second, allowing the analysis to proceed outside this traditional context, under the amendment's general reason-

---

[4] In *Newsome v. McCabe*, we rejected the tripartite formula for a constitutional tort of malicious prosecution—that is, analyzing the claim first as one for unlawful arrest under the Fourth Amendment; then, as pretrial detainees, under substantive due process; and, after trial, under the Eighth Amendment protections against cruel and unusual punishment—that was set forth as dicta in *Wilkins* and *Reed*, by interpreting *Albright*, in accord with its narrowest ground of decision, to bar any constitutional theory of malicious prosecution at all when adequate state-law remedies exist. *Newsome v. McCabe*, 256 F.3d 747, 750-51 (7th Cir. 2000). Nothing in that decision, however, disturbs the effective holding of *Wilkins* that Fourth Amendment protections do not extend beyond the point of arrest. In fact, consistent with *Reed*, our decision in *Newsome* recognizes that Justice Ginsburg's *Albright* "continuing seizure" concurrence is not controlling law. *Id.* at 751 (finding *Albright*'s narrowest ground of decision and effective holding to be Justices Kennedy's and Thomas's concurring opinion).

ableness requirement, would lead to an "unwarranted expansion of constitutional law." *Id.* We noted, for example, that if an officer were to stick his tongue out at a suspect during a custodial interrogation, his behavior would certainly be considered unreasonable.

> [W]ould it therefore make the "continuing seizure" . . . violative of the Fourth Amendment? Surely not. But why not? There are no obvious limiting principles within the amendment itself. The problem is that the concept of continuing seizure attenuated the element that makes police conduct in the arrest situation problematic: the police are taking away a person's liberty. Custodial interrogation does not curtail a person's freedom of action; it presupposes that he has already lost that freedom—for by definition he is already in custody.

*Id.* Given this, we found it unwise to extend the scope of the amendment.

Against our reaching an analogous conclusion here, Lee argues that the Supreme Court's holding in *United States v. Place* broadly proposes that upon changed circumstances over time, a seizure of property that began as reasonable can become unreasonable. 462 U.S. 696 (1983). But such an extension of *Place* betrays the narrow confines of its holding, which is limited to brief investigative detentions of property on less than probable cause. *Place* held that an officer who can articulate a reasonable suspicion that property may be involved in a crime may act to detain that property in order to conduct further investigation. *Id.* at 706 ("In sum, we conclude that when an officer's observations lead him reasonably to believe that a traveler is carrying luggage that contains narcotics, the principles of *Terry* [*v. Ohio*, 392 U.S. 1 (1968)] and its progeny would permit the officer to detain the luggage briefly to investigate the circumstances that aroused his

suspicion, provided that the investigative detention is properly limited in scope.") After the expiration of a reasonable amount of time for the police to conclude whether their suspicions were justified, however, that detention begins to impede significantly upon the individual's possessory interest and, as such, *becomes a full-blown seizure. See Farm Labor Organizing Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 548 (6th Cir. 2002). If at that moment, the police have not established probable cause, then they cannot justify the property's seizure. In short, *Place* and its progeny deal only with the transformation of a momentary, investigative detention into a seizure. *See Fox*, 176 F.3d at 351 n.6 ("The *Place* Court provided a framework for analyzing when law enforcement agents may hold someone's property for a very short time on less than probable cause to pursue a limited course of investigation."). As such, *Place* is ultimately concerned only with the initial loss of that possessory interest and whether the existence of probable cause renders that loss reasonable. It has no application after probable cause to seize has been established.

Similarly, other Fourth Amendment cases, such as those which mandate that property detained during a consensual search be returned to the owner upon the withdrawal of consent, are concerned ultimately with the relation between probable cause and a loss of a possessory interest. Generally speaking, a person who has given valid consent to a seizure may withdraw that consent by requesting the article's return. *Florida v. Jimeno*, 500 U.S. 248, 252 (1991) ("A suspect may of course delimit as he chooses the scope of the search to which he consents."); *United States v. Jachimko*, 19 F.3d 296, 299 (7th Cir. 1994) (stating general principle that consent may be withdrawn); *Richard A. Vaughn, DDS, P.C. v. Baldwin*, 950 F.2d 331 (6th Cir. 1991) (where plaintiff gave his business records to the IRS so that they could be copied but later made a

formal demand for their return, "the government had no right to possession after consent was withdrawn"). It could be argued from these cases that continuing to retain property in light of an owner's demand for its return constitutes an unreasonable seizure in all circumstances. But like *Place*, these cases cannot be read so broadly. Most courts treat consent as an exception to the amendment's warrant requirement, *see Fox*, 176 F.3d at 357 n.4 (discussing consent as "an exception to the Fourth Amendment's warrant requirement in the same way as an inventory search is"); *see also United States v. Basinski*, 226 F.3d 829, 834 (7th Cir. 2000) (same), and thus recognize that the owner's revocation and request for return "need not be complied with if there is then probable cause to retain [the property] as evidence." 3 WAYNE R. LA FAVE, SEARCH & SEIZURE § 8.1(c) (3d ed. 1996) (citing examples); *see also United States v. Mitchell*, 82 F.3d 146, 151 (7th Cir. 1996). It follows that, like *Place*, these cases address the circumstances under which police may initially detain personal property on less than probable cause—either upon reasonable suspicion of criminal activity or by virtue of the owner's consent. But when either of these two preconditions expire, a limited detention becomes a full-blown seizure, which is either justified by probable cause or is unreasonable.

Attempting to extend the Fourth Amendment through *Place* or these consent cases to address the situation before us would implicate the same practical concerns we found unsettling in *Wilkins*. In short, the core of past Fourth Amendment jurisprudence would no longer be relevant to resolve the issues presented. *See Riley*, 115 F.3d at 1162-63 (citing "[d]ecades of Fourth Amendment precedent [that has] focused on the initial deprivation of liberty"; for example, "what constitutes an arrest; what constitutes probable cause to make an arrest; when probable cause must be found by a neutral magistrate; which officials

may issue a warrant; what type of information is required to support a valid warrant; and what force may be used during an arrest." (citations omitted)). Admittedly, probable cause, while unquestionably existent at the moment of the car's impoundment, is no longer offered as an interest to justify the City's refusal to return Lee's car unconditionally. In fact, the government interests advanced here aren't really concerned with law-enforcement goals at all; they are more appropriately characterized as fiscal. And they are strikingly similar to those which we have already considered legitimate and rational in another constitutional context. *Miller v. City of Chicago*, 774 F.2d 188, 195-96 (7th Cir. 1985) (rejecting plaintiff's substantive-due-process challenge to the city's practice of conditioning the release of stolen cars that had been recovered and impounded by police upon the owner's payment of towing and storage fees because it was reasonable for the City to apportion particularized law-enforcement costs to those individuals who receive the most direct and substantial benefit from that law-enforcement action). Evaluating the legitimacy of these fiscal interests and weighing them against an individual's competing interest in regaining his property is not, and never has been, a concern of the Fourth Amendment. To paraphrase *Wilkins*, a government's decision regarding how and when to return once lawfully obtained property "raises different issues, which the text, history, and judicial interpretations of the Fourth Amendment do not illuminate." *Wilkins*, 872 F.2d at 194.

At bottom, Lee's complaint against the charging of towing and storage fees concerns the fairness and integrity of the criminal-justice process, and does not seek to constrain unlawful *intrusions* into the constitutionally protected areas of the Fourth Amendment. *See United States v. Wilson*, 540 F.2d 1100, 1103 (D.C. Cir. 1976) ("[I]t is fundamental to the integrity of the criminal justice process that property involved in the proceeding against which

no Government claim lies, be returned promptly to its rightful owner."). It is axiomatic that property once seized, but no longer needed, should at some point be returned to its rightful owner. *Id.* Equitable principles would dictate as much. *Id.* at 1103-04 ("[The] district court . . . has both the [equitable] jurisdiction and the duty to return the contested property here regardless and independently of the validity or invalidity of the underlying search and seizure"); *see also United States v. Martinson*, 809 F.2d 1364, 1369-70 (9th Cir. 1987) (entertaining equitable jurisdiction over motions to return property seized when no criminal proceedings are pending against the movant and collecting cases regarding the same); *Illinois v. Hermann*, 501 N.E.2d 842, 845-47 (Ill. App. Ct. 1986) (entertaining defendants' motion for return of property seized under Illinois Criminal Code when all criminal proceedings against defendants had been concluded). What is more, the government should not, by virtue of its authority to seize, effect *de facto* forfeitures of property by retaining items indefinitely. *See United States v. Premises Known As 608 Taylor Ave.*, 584 F.2d 1297, 1302 (3d Cir. 1978).[5] But we know that due-process guarantees would prevent this, by requiring the government to bring forfeiture proceedings against the seized property and to bring them without unreasonable delay. *See id.* at 1302; *cf. In re Search of Kitty's East*, 905 F.2d 1367, 1371, 1375 (10th Cir. 1990) (discussing potential First Amendment limitations to continuing to hold property alleged to be obscene). And in conducting a due-process analysis to decide how, when, and under what terms the property may be returned, the Fifth and Fourteenth Amendments' texts, histories, and judicial interpretations can better aid

---

[5] Other courts have likened continued retention of evidence as a taking without just compensation. *Lowther v. United States*, 480 F.2d 1031, 1033-34 (10th Cir. 1973). Lee makes no such argument before this Court.

a court in balancing the competing interests at stake. *See*, *e.g.*, *Miller*, 774 F.2d at 195-96; *Stypmann v. City & County of San Francisco*, 557 F.2d 1338, 1342-43 (9th Cir. 1977) (finding city's practice of establishing possessory lien for towing and storage fees without opportunity for hearing deprived owners of due process). Indeed, Lee raises a substantive-due-process challenge here, and we address it below. For all the reasons discussed, we believe this is the better approach.

In sum, we conclude, as did the Sixth Circuit in *Fox*, that *Soldal*'s "meaningful interference with a possessory interest" definition is limited to an individual's interest in *retaining* his property. Once an individual has been meaningfully dispossessed, the seizure of the property is complete, and once justified by probable cause, that seizure is reasonable. The amendment then cannot be invoked by the dispossessed owner to regain his property. Therefore, Lee's car was seized when it was impounded. The car's subsequent search was completed after ten days. Conditioning the car's release upon payment of towing and storage fees after the search was completed neither continued the initial seizure nor began another.

## B. *Substantive Due Process*

Lee next argues that the City's procedure violated his substantive-due-process rights under the Fourteenth Amendment; he does not raise a procedural-due-process challenge. Although Lee has now identified the proper constitutional theory implicated by the City's practice, we ultimately hold that he cannot make out a claim for recovery under it.

Both the Supreme Court and this Court have "emphasized how limited the scope of the substantive due process doctrine is." *Dunn v. Fairfield Cmty. High Sch. Dist. No. 225*, 158 F.3d 962, 965 (7th Cir. 1998) (citing *Washington v. Glucksberg*, 521 U.S. 702 (1997)). Accordingly,

substantive due process is not "a blanket protection against unjustifiable interferences with property." *Schroeder v. City of Chicago*, 927 F.2d 957, 961 (7th Cir. 1991). Unless a governmental practice encroaches on a fundamental right, substantive due process requires only that the practice be rationally related to a legitimate government interest, or alternatively phrased, that the practice be neither arbitrary nor irrational. *See Glucksberg*, 521 U.S. at 728. And when a substantive-due-process challenge involves only the deprivation of a property interest, a plaintiff must show "either the inadequacy of state law remedies or an independent constitutional violation" before the court will even engage in this deferential rational-basis review. *Doherty v. City of Chicago*, 75 F.3d 318, 323-26 (7th Cir. 1996); *see also Wudtke v. Davel*, 128 F.3d 1057, 1062 (7th Cir. 1997) ("[I]n cases where the plaintiff complains that he has been unreasonably deprived of a state-created property interest, without alleging a violation of some other substantive constitutional right or that available state remedies are inadequate, the plaintiff has not stated a substantive due process claim." (quotations omitted)).

Because Lee's substantive-due-process claim does not implicate a fundamental right and involves only the deprivation of a property interest, he must show as an initial matter either that state-law remedies are inadequate or that an independent constitutional right has been violated. *Doherty*, 75 F.3d at 325-26. Indeed, we recently rejected similar substantive-due-process claims by vehicle owners who alleged that the City had wrongfully held their vehicles at an auto pound and had damaged the vehicles during the towing and storage process because the plaintiffs failed to make either of these requisite showings. *Gable v. City of Chicago*, 296 F.3d 531, 541 (7th Cir. 2002); *see also Holstein v. City of Chicago*, 29 F.3d 1145, 1149 (7th Cir. 1994) (dismissing plaintiff's substantive-due-process challenge to city's post-tow administra-

tive proceedings because "in order to properly allege a violation of substantive due process, the plaintiff must at least show 'either a separate constitutional violation or the inadequacy of state law remedies.'"). Like the plaintiffs in *Gable*, Lee cannot make either showing here. As discussed above, he cannot state a claim under the Fourth Amendment. And far from alleging the inadequacy of state-law remedies, Lee has asserted pendant state-law claims for bailment, trespass, and wrongful conversion. *See also Gable*, 296 F.3d at 540 (discussing available state-law remedies).[6] Consequently, Lee has not made a substantive-due-process claim.

---

[6] One argument Lee could have raised in an attempt to preserve his substantive-due-process claim but did not, probably because it is counterintuitive to his interests, is that charging towing and storage fees for investigative impoundments was authorized by state statute. The City, in fact, asserts this statutory authority, citing section 4-203 of the Illinois Motor Vehicle Code, which states "[w]hen a vehicle removal from either public or private property is authorized by a law enforcement agency, the owner of the vehicle shall be responsible for all towing and storage fees." 625 ILL. COMP. STAT. 5/4-203 (2002). Given the self-evident knowledge that the police may "conduct otherwise permissible searches [and seizures] for the purpose of obtaining evidence," *cf. Warden v. Hayden*, 387 U.S. 294, 306 (1967), the argument would proceed that the unchallenged seizure of Lee's car was an "authorized" vehicle removal within the statute's plain meaning. *But cf. Illinois v. Searle*, 427 N.E.2d 65, 68 (1981) (finding section 4-207 inapplicable to release of motorcycle seized and detained because it lacked an identifiable manufacturer's identification as required by law). If this argument is correct, and we do not hold here that it is, then it would appear that this statutory authority would render any state common-law remedies unavailable. Without the benefit of argument or brief, however, we decline to resolve the issue here. But if Lee were to discover his state common-law claims barred by statute, our holding here would not bar him from raising a substantive-due-process challenge at that time.

*II.  Rule 12(b)(1)*

Having determined that Lee has failed to state a claim for which relief can be granted under § 1983 by alleging that the City's towing and storage fees violated his constitutional rights, we next evaluate whether he has satisfied his burden to establish standing to contest the constitutionality of the City's spray painting of his car. We review a district court's decision to grant or deny a Rule 12(b)(1) motion to dismiss for lack of standing *de novo*. *Doe v. County of Montgomery, Ill.*, 41 F.3d 1156, 1158 (7th Cir. 1994).

In ruling on a motion to dismiss for want of standing, the district court must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor. *Retired Chicago Police Assoc. v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996). The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing the required elements of standing. *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Those elements are (i) an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized and, thus, actual or imminent, not conjectural or hypothetical; (ii) a causal relationship between the injury and the challenged conduct, such that the injury can be fairly traced to the challenged action of the defendant; and (iii) a likelihood that the injury will be redressed by a favorable decision. *See Lujan*, 504 U.S. at 560-61. If standing is challenged as a factual matter, the plaintiff must come forward with "competent proof"—that is a showing by a preponderance of the evidence—that standing exists. *Retired Chicago Police Assoc.*, 76 F.3d at 862.

The City here argues, and the district court agreed, that it is challenging Lee's standing as a factual matter, which triggered Lee's burden to come forward with competent

proof of standing. The City isn't challenging whether Lee owned the car before it was towed. He did. Or, for that matter, the City isn't challenging whether the car is once again Lee's. It is. But the City does challenge whether Lee had a property interest in the car at the time it was spray painted. According to the City, Lee's car was no longer his after the expiration of thirty days from its impoundment. If Lee's property interest in the car divested after thirty days, the argument goes, the City had the authority to crush it, sell it at auction, or otherwise dispose of it as the City saw fit. And if the City decided to spray paint inventory numbers on the car upon the thirty-first day to ensure that it would later dispose of the proper car, so be it—it could do with "its" car as it pleased. Since Lee never alleged, let alone introduced any evidence, that the City spray painted the car before the thirty-first day, the argument concludes that he has failed in his burden to prove standing with competent evidence.

We are not persuaded. We do not believe that the City has raised a factual challenge, and, as such, conclude that Lee's only burden was to plead sufficient facts to confer standing, which he did. The City's attempt to raise a factual challenge is premised on an erroneous legal conclusion; namely, that Lee lost all property interest in his car at the end of thirty days.

Although property rights are protected by the U.S. Constitution, they are created by applicable state and local law. *See*, *e.g.*, *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Specifically, property rights "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id. Accord Ulichny v. Merton Cmty. Sch. District*, 249 F.3d 686, 700 (7th Cir. 2001). So, we turn

to those provisions of Illinois law that the City advances in support of its argument.

The City relies upon the Illinois Motor Vehicle Code for its authority to dispose of a car as it wishes after it has held the car for thirty days. Specifically, it cites section 4-208(a):

> Disposal of unclaimed vehicles.
>
> > (a) . . . whenever an abandoned, lost, stolen or unclaimed vehicle, . . . remains unclaimed by the registered owner, lienholder or other legally enti-tled person for a period of 15 days after notice has been given under Sections 4-205 and 4-206 of this Code, the vehicle shall be disposed [as provided by law.]

625 ILL. COMP. STAT. 5/4-208(a) (2002). Lee argues that the provision is inapplicable—and that the City had no authority at all to dispose of his car—because the stat-ute refers only to "abandoned, lost, stolen, or unclaimed vehicles." He argues that a car seized for evidentiary purposes is not abandoned, lost, or stolen and that the car was not "unclaimed" within the meaning of the stat-ute because Lee had repeatedly attempted to retrieve his car once the City had completed its search.

We agree with Lee's position. First, the City assumes that until it released the car to Lee upon payment of a portion of the towing fees or his successful pursuit of a hearing, Lee's car remained "unclaimed" within the mean-ing of section 4-208, triggering the City's right to dispose of the car and, by implication, the loss of Lee's property interest. Contrary to the City's assumption, reclamation does not depend upon release. The two are treated as separate and distinct actions under the Act.

Under section 4-207(a), an owner may *reclaim* his vehicle "[a]ny time before [it] is sold at public sale or disposed of

as provided in Section 4-208 . . . by presenting to the law enforcement agency having custody of the vehicle proof of ownership or proof of the right to possession of the vehicle." 625 ILL. COMP. STAT. 5/4-207(a) (2003). Nothing in that subsection conditions reclamation upon the payment of towing and storage fees. Rather it is only the *release* of an owner's car that is conditioned upon payment of those fees. Section 4-207(b) states that "[n]o vehicle shall be released to the owner, lienholder, or other person under this section until all towing, storage, and processing charges have been paid." *Id.* 5/4-207(b).

The clear import of this distinction in the statutory language is that an owner may alleviate the threat of loss or destruction of his car by properly asserting entitlement to the vehicle even if he lacks the funds to arrange for the car's immediate release. By alleging that he attempted repeatedly to retrieve his car by asserting his right to possession, Lee has pled sufficient facts to give rise to the inference that he had reclaimed his vehicle within the meaning of the Code. By definition, after he "reclaimed" his vehicle, it was no longer "unclaimed" within the meaning of section 4-208, and since it is agreed that Lee's car was not abandoned, lost, or stolen, the City could no longer pursue disposal. Although the City characterizes its refusal to dispose of Lee's car once the notice period had expired as an act of administrative grace, that disposal proceedings should have halted was in fact mandated by statute.

Second, even if we were to ignore the statutory distinction between reclamation and release, section 4-207 makes clear that the owner of the car may reclaim the car at "*any time before*" it is sold at auction or disposed. *Id.* 5/4-207(a) (emphasis added). This means that regardless of the expiration of the notice period triggering the City's *ability or authority* to sell or dispose the car, the car owner still possesses some residual property interest that can be

invoked until the moment of actual sale or disposal. In other words, at most a car owner's property right becomes defeasible upon the expiration of the notice period. It does not dissipate altogether. And that defeasible property interest expires only upon the completion of a sale or disposal.[7]

Accordingly, Lee maintained a cognizable property interest in his vehicle throughout the City's possession of it. Since the City's position was based on an erroneous legal conclusion, it has raised no factual challenge, and Lee has pleaded sufficient facts to confer standing to challenge the City's spray painting of his car.

The City argues in its brief that should we reach this conclusion, we should proceed to evaluate its argument that Lee fails to state a claim for relief under § 1983 to challenge the City's spray painting of his vehicle. Before the district court, the City had alternately moved under Rule 12(b)(6) to dismiss Lee's spray-painting claim on the grounds that he failed to allege municipal liability, but the district court did not reach the issue, having granted the City's Rule 12(b)(1) motion to dismiss for lack of standing. The City argues that on remand to the district court, they would once again move to dismiss Lee's spray-painting claim under Rule 12(b)(6), and that the issue would inevitably wind up before us, where our review would

---

[7] Alternatively, section 4-207(a) can be read to grant the owner a statutory right to redemption of the vehicle that extends until the completion of the auction sale or other disposal in accordance with Illinois law. *Cf. Colon v. Option One Mortgage Corp.*, 319 F.3d 912, 919-20 (7th Cir. 2003) (discussing the equitable and statutory redemption rights granted to homeowners and mortgagors under Illinois law). A redemption right is a "significant property interest." *See In re Brown*, 126 B.R. 767, 770 (Bank. N.D. Ill. 1991); *see also In re Cook County Treasurer*, 706 N.E.2d 465, 468 (Ill. 1998).

proceed *de novo*. *Johnson v. Martin*, 943 F.2d 15, 16 (7th Cir. 1991). In the interests of judicial economy, the City asserts, we should endeavor to forgo this subsequent appeal and reach their arguments that Lee's spray-painting claim fails to state a claim under the Fourth or Fourteenth Amendments.

Notwithstanding the fact that the City's argument has some weight—it is likely, given our evaluation of his claim against the City's towing practices, that Lee will be unable to show that his car's spray painting constituted a Fourth Amendment violation or that state-law remedies are inadequate—we are foreclosed from resolving the issue here. First, this Court has unequivocally stated, that without cross-appeal, an appellee may not "attack the decree with a view to either enlarging his own rights thereunder or of lessening the rights of his adversary, whether what he seeks is to correct an error or to supplement the decree with respect to a matter not dealt with below." *United States ex rel. Stachulak v. Coughlin*, 520 F.2d 931, 937 (7th Cir. 1975) (quoting *United States v. Am. Ry. Express Co.*, 265 U.S. 425, 435 (1924)). A ruling granting a motion to dismiss for lack of subject matter jurisdiction is not on the merits, *see Winslow v. Walters*, 815 F.2d 1114, 1116 (7th Cir. 1987), whereas a dismissal under Rule 12(b)(6) would be. Accordingly, the City seeks to enlarge its rights and supplement the district court's decree with a ruling on the merits that was not reached below. It cannot do this without filing a cross-appeal.

Second, although the City did advance a Rule 12(b)(6) argument in front of the district court, that argument was only that Lee had failed to allege facts giving rise to municipal liability under the *Monell* standard. *See Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978). Here, the City advances arguments that the car's spray painting was not a Fourth Amendment seizure and that Lee has failed to allege that available state-law remedies

are inadequate. Even if we were to consider a merit decision, the City cannot advance arguments not raised before the district court for the first time on appeal. *See Kyle v. Morton High Sch. Dist. 201*, 144 F.3d 448, 454 (7th Cir. 1998); *Oates v. Discovery Zone*, 116 F.3d 1161, 1168 (7th Cir. 1997).

As a result, we remand Lee's spray-painting claim for further proceedings. We note that since a federal claim will be once again be before it on remand, the district court's stated reasons for denying supplemental jurisdiction over Lee's state-law claims pursuant to 28 U.S.C. § 1367 are no longer valid.

## CONCLUSION

Conditioning a car's release upon payment of towing and storage fees does not equate to a "seizure" within the meaning of the Fourth Amendment. And because Lee has failed to show that traditional state-law remedies cannot provide him with adequate avenues for relief, he cannot make a claim that this practice violates his substantive-due-process rights. If any error is to be found with this practice, we suspect that the case-by-case analysis afforded by the common law provides the appropriate opportunity to remedy it, without having to announce new constitutional principles whose future application may prove unmanageable or unwise.

Regarding the City's decision to spray paint inventory numbers on impounded vehicles, we find that Lee has alleged a cognizable property interest sufficient to confer upon him standing to challenge the practice. Although that interest may have become defeasible upon the expiration of the notice period after impoundment, it had not expired. Therefore, the district court erred when it determined that Lee lacked standing to bring a claim challenging the City's spray painting of his car.

The decision of the district court is therefore AFFIRMED IN PART, REVERSED IN PART and REMANDED for proceedings consistent with this opinion.

DIANE P. WOOD, *Circuit Judge*, concurring. I agree with the majority that Mark Lee has standing to contest the constitutionality of the act of agents of the City of Chicago in spray painting his car and that further proceedings are warranted on this claim. I also agree that Lee's substantive due process claim was correctly rejected by the district court. With respect to both those aspects of the case, I am happy to join as well in the majority's rationale. It is the Fourth Amendment claim that gives me pause, although in the final analysis I too believe that Lee should not succeed on this claim. For the reasons I explain below, however, I think it undesirable to hold sweepingly that the Fourth Amendment has nothing to do with the reasonableness of the continued detention of property after the rationale supporting the initial seizure no longer holds. The implications of such a holding might end up being broad indeed. I am also concerned that the legal picture might have looked different if it had been more complete, and Lee had presented a fully developed claim under the Fifth Amendment's Takings Clause. Taking the Fourth and Fifth Amendment theories one at a time gives rise to a risk that we might reject each one in turn, thinking that the other would remain available to a proper plaintiff. Even taking into account the fact that constitutional gaps can and do exist, it is not a good idea to create them inadvertently.

Before turning to the Fourth and Fifth Amendment arguments that could be postulated here, it helps to set

the stage. As the majority notes, Lee was a victim of a stray shooting in the City of Chicago. There is no hint in this record that he was anything but an innocent bystander, who happened to have some property (his car) that was likely to be of use to the police in their investigation of a crime. There is also no hint that his car was in an area restricted by any state or local law, such that it was subject to towing and impoundment under well established police powers. If the police had seized anything else belonging to such an innocent bystander/victim, such as a camera or a tape recording that might have proven valuable to their investigation, no one would have assumed that the City could charge a fee for the return of the property. The question here, in a sense, is why should a car be different? More fundamentally, the question is whether there is any recourse for an innocent party like Lee when the government takes his property, initially for law enforcement purposes, and then refuses to return it unconditionally when the original *raison d'être* of the seizure has expired.

Lee rested his principal hopes on the argument that the Fourth Amendment's prohibition against unreasonable seizures offered a remedy for him. He made it clear that he was not challenging the right of the police to effect the initial seizure. Instead, he focused only on the constructive "second seizure" of his car, which took place in the time period after the police no longer needed the car, when the City was taking the position that it would allow Lee to recover his car only upon the payment of the same towing and impoundment fees that parking ticket scofflaws and other traffic violators must pay. The majority rejects the conceptual separateness of the "second seizure," and instead resolves Lee's claim by relying on this court's long-time rejection of the idea of a "continuing" seizure for Fourth Amendment purposes. See *Wilkins v. May*, 872 F.2d 190, 194-95 (7th Cir. 1989). I am not so

confident that the Fourth Amendment is utterly irrelevant to the reasonableness of a decision to refuse to relinquish seized property once the government has no need for it. Furthermore, if that is the path we are to go down, I think it important to realize that we risk creating an unwarranted gap in the constitutional protections that exist with respect to governmental takings of property.

I consider first the Fourth Amendment point that Lee has urged before us. As the majority acknowledges, *ante* at 4, Lee agrees that both the initial impoundment of his car for evidentiary purposes and the delay between the City's seizure of his car and its completion of the search of the car ten days later were reasonable for Fourth Amendment purposes. As of the 11th day, however, the City's position was that Lee was not entitled to show up at the auto pound and retrieve the car—at least not without the usual payment in hand. To the contrary, he was told that he either had to produce the money within the next 20 days or so, or the car would be crushed or sold at auction. It is at this point, Lee contends, that a second seizure occurred. Moreover, this second seizure was unreasonable, within the meaning of the Fourth Amendment, because it was unsupported either by law enforcement needs or by any of the laws that normally entitle police to take someone's car to the pound. Ransom, Lee claims, should not be the price of recovering property that is unlawfully held by the government.

The City's argument in response is that the demanded payment had no impact at all on Lee's freedom to recover his car. But that cannot be right: if the City had told Lee he could retrieve his car only upon the payment of $100,000, or only if he signed the deed to his home over to the City, he still would have been "free" in this sense to get the car, but in my view, at least, such a condition would be plainly unlawful. As a fall-back, the City also argues that certain ancillary costs go along with seizures

of automobiles in particular—towing and storage are not free services—and that it is entitled to apportion those costs to the victims of crimes (whether or not they wish to press charges). If this kind of apportionment is constitutional, and if the only condition upon retrieval of property is the payment of these reasonable ancillary costs, then the affected person is indeed free to reclaim the property as a legal matter.

The City's latter argument, in my view, comes closer to providing a sound basis for resolving the Fourth Amendment aspect of this case. First, it is well recognized that the touchstone of the Fourth Amendment is reasonableness. See *Ohio v. Robinette,* 519 U.S. 33, 39 (1996) (quoting *Florida v. Jimeno*, 500 U.S. 248, 250 (1991)). We have further noted that all individuals in society are benefitted by law enforcement activities, and all (presumably including crime victims) must therefore bear some of the burdens that go along with police activity. See *Miller v. City of Chicago*, 774 F.2d 188 (7th Cir. 1985) (upholding, over a substantive due process challenge, the constitutionality of the City of Chicago's assessment of costs for the towing of recovered stolen automobiles as part of their return to their rightful owners). Even so, the government's law enforcement interests surely do not confer on the police a roving warrant to seize and keep any private property they want, for however long they want to keep it. Our task is to find the proper balance between those law enforcement interests and the general citizen's interest in her property. I therefore disagree with the majority, to the extent it has taken the position that the City's interest was primarily fiscal by the time Lee wanted to retrieve the car. Instead, we need to look at the events as a whole. Doing so, it is important to me that (1) the second seizure was brief in duration, (2) the condition imposed on Lee was only to pay the actual cost of the towing and storage (*i.e.*, an objectively reasonable sum), and (3) the City

never carried out its threat to destroy the car. (I do not comment here on Lee's other claim for the damage to his vehicle while it remained in the City's custody, as I agree with the majority's disposition of that part of the case.) On these facts, I would say that there was no Fourth Amendment violation commencing with the second seizure, because whatever continued seizure occurred in this particular situation was not unreasonable.

The majority, however, has chosen to rule broadly that the Fourth Amendment has nothing to say about a seizure beyond the instant when that seizure occurs. I agree that the Second Circuit's decision in *United States v. Jakobetz,* 955 F.2d 786 (2d Cir. 1992), and the Sixth Circuit's decision in *Fox v. Van Oosterum,* 176 F.3d 342 (6th Cir. 1999), are of limited utility here, because both the facts and the legal contexts were different. I am not convinced, however, that simply saying that a seizure is a temporally limited act, see *ante* at 9, is enough to resolve the question. How short a time period are we talking about? The word "seizure" also implies that the property is being held long enough to ensure that it will not be recaptured. At the other end of the spectrum would be a permanent taking of the property. This, the majority agrees, would amount to a *de facto* forfeiture. *Ante* at 15. It assumes that the government would not do this without the proper forfeiture proceedings, brought within the proper time, but I am not so sanguine. Lurking just below the surface of Lee's case is the knotty problem of what can be done about this set of cases.

One possibility, endorsed by some, would be to find a Fourth Amendment violation in the continued retention of the property. See generally Fern Lynn Kletter, *Destruction of Property as Violation of Fourth Amendment,* 98 A.L.R.5th 305 (2002). If *Wilkins* indeed imposes the instantaneous view of "seizure" on us, then that avenue will not be available in this court. See also *Reed v. City of Chicago,*

77 F.3d 1049, 1053 (7th Cir. 1996). Yet it is troubling indeed to think that no remedy at all exists for people whose property is taken by the government and not properly returned. The question is what can that remedy be, if the Fourth Amendment does not provide it?

The obvious candidate, as the majority notes in footnote 5, *ante* at 15, is the Takings Clause of the Fifth Amendment, as incorporated against the states by the Fourteenth Amendment. *Chicago, Burlington & Quincy R.R. v. City of Chicago,* 166 U.S. 226 (1897). The Fifth Amendment to the Constitution states that "private property shall not be taken for public use, without just compensation." U.S. CONST. amend. V. The Takings Clause has been held to apply to two types of governmental action: first, the taking of physical possession or control of an interest in property for some public purpose; and second, regulations prohibiting private uses. See *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 321-23 (2002). The first kind of action is part of the inherent sovereign power of eminent domain. Regulatory takings, by contrast, occur without the formalities of eminent domain: they result from the state's general powers to impose regulations that, in effect, condemn some or all of the use of the property and thereby diminish the value to its owners to such an extent that it is as if the government had condemned the property.

Viewed from a takings perspective, Lee suffered from the former kind of taking: governmental authorities physically took some of his personal property for a public purpose and kept it for a period of time. The fact that the taking (which occurred after the permissible seizure was over) was temporary rather than permanent is of no consequence. The Supreme Court has made it clear that compensation is required even when the government's physical occupation is temporary. See *Tahoe-Sierra*, 535 U.S. at 322; see also *First English Evangelical Lutheran*

*Church v. County of Los Angeles*, 482 U.S. 304, 318 (1987) (collecting cases).

Looking briefly at Lee's (hypothetical) takings claim, we would begin with the question whether he had a property interest in the item taken. As of the time the City's need for the car ended, there can be no doubt that he did. Even the City has argued only that his interest was terminated at the end of the thirty-day period, and the majority has shown in the standing portion of its opinion that Lee continued to have a defeasible property interest in the car even after that. Second, the government must have actually taken the property. This is not a formalistic inquiry about title; instead, a claimant need only prove that "property," in the sense of "the group of rights inhering in the citizen's relation to [a] physical thing," has been "taken." *United States v. General Motors Corp.,* 323 U.S. 373, 378 (1945). Any physical occupation is enough, even where the owner retains at least some use. See *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 426-28 (1982). Nor, as I have already noted, does the duration of the impoundment matter for a physical taking. Duration of the restriction is "one of the important factors that a court must consider in the appraisal of a *regulatory* takings claim," *Tahoe-Sierra*, 535 U.S. at 342 (emphasis added), but the duty to compensate an owner for a physical taking is "categorical," *id.* at 322. Third, a physical taking must be for a public use. But that element goes to the legitimacy of the government's taking to begin with; if a taking is not for a public purpose, the government has no right to complete the act of eminent domain. See, *e.g.*, *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 241 (1984) ("[O]ne person's property may not be taken for the benefit of another private person without a justifying public purpose, even though compensation be paid.") (citing *Thompson v. Consol. Gas Corp.*, 300 U.S. 55, 80 (1937)). In any event, the City here makes a public use argument

both about its need to retain or destroy cars in its pound, and so that element is not likely to be problematic in Lee's case.

If a plaintiff in Lee's position proceeds under a theory that she has suffered a temporary taking, then she might seek to recover two different kinds of compensation. First, she might seek compensation for the reasonable value of the use of the car during the period that it was held by the City after the initial seizure was finished. The usual measure of "just compensation" in such a situation is "the property owner's loss rather than the government's gain." See *Brown v. Legal Found.*, ___ U.S. ___, ___, 123 S.Ct. 1406, 1419 (2003); see also *Boston Chamber of Commerce v. City of Boston*, 217 U.S. 189, 195 (1910). "Just compensation" might therefore require the City to reimburse the plaintiff for the cost of renting a car in the meantime, or the cost of alternate means of transportation. Second, a plaintiff might seek compensation for damage caused to her vehicle—in Lee's case, the spray-painting—during its temporary use by the City. This latter form of compensation for damages incurred while in the government's possession was squarely upheld by the Supreme Court in *General Motors*. 323 U.S. at 378.

I do not mean to suggest in this discussion that Lee, or any other particular plaintiff, would necessarily prevail on a Fifth Amendment Takings claim. Some courts have ruled, at least in the context of relatively limited retentions of property, that nothing legally cognizable has been "taken" from the plaintiff because all citizens have a duty to assist the police. See, *e.g.*, *Eggleston v. Pierce County,* 64 P.3d 618, 623-24 (Wash. 2003); *Emery v. State,* 688 P.2d 72, 79-80 (Or. 1984). Other courts have disagreed. See *Wallace v. City of Atlantic City,* 608 A.2d 480, 483 (N.J. Super. Ct. Law Div. 1992). The Supreme Court held, in the rather different context of the duty of an incarcerated material witness to assist the law enforcement au-

thorities, that no takings claim had been stated because citizen contributions to criminal investigations are in the nature of a public duty. See, *e.g.*, *Hurtado v. United States*, 410 U.S. 578, 588-89 (1973). *Hurtado,* however, speaks narrowly of the "giving of testimony" and "attendance upon court," *id.*, and it is not clear that the Court meant to extend its holding to the temporary forfeiture of property that was no longer needed by the police.

The City might also point out that *in rem* forfeitures of property used for illicit purposes are non-compensable exercises of the government's police power. See, *e.g.*, *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 680, 686-87 (1974); *Bowman v. United States*, 35 Fed.Cl. 397, 404 (1996); *United States v. One 1979 Cadillac Coupe de Ville*, 833 F.2d 994, 1000-01 (Fed. Cir. 1987); see also *C.J. Hendry Co. v. Moore*, 318 U.S. 133, 137 (1943) (noting long, pre-Founding history of forfeiture of property used in violation of the law). But there is nothing in these cases to indicate that *in rem* forfeitures of the property of innocent bystanders are equally acceptable. See *Bowman*, 35 Fed.Cl. at 404; *Froudi v. United States*, 22 Cl.Ct. 290, 297-98 (1991); see also *Federal Ins. Co. v. United States*, 11 Cl.Ct. 569, 570-71 (1987) (analyzing but reserving judgment on the question whether "the Government can effect a taking by holding the property of an innocent bystander as evidence in a criminal investigation").

Moreover, while the circuits are split on the question whether damages are available as part of a motion under FED. R. CRIM. P. 41(e) for return of property that is damaged, transferred, or lost while in government possession pursuant to a criminal investigation, compare *Mora v. United States,* 955 F.2d 156, 160 (2d Cir. 1992); *United States v. Martinson*, 809 F.2d 1364, 1367-68 (9th Cir. 1987) (damages available), with *Okoro v. Callaghan*, 324 F.3d 488, 491 (7th Cir. 2003); *United States v. Hall*, 269 F.3d 940, 943 (8th Cir. 2001); *United States v. Potes Ramirez,*

260 F.3d 1310, 1316 (11th Cir. 2001); *United States v. Jones,* 225 F.3d 468, 470 (4th Cir. 2000); *United States v. Bein,* 214 F.3d 408, 413 (3d Cir. 2000); *Pena v. United States*, 157 F.3d 984, 986 (5th Cir. 1998) (damages not available), the sticking point in those cases has not been whether the plaintiff must internalize the costs of criminal investigations because of the use of the property in illicit conduct or out of public duty. It has instead been whether sovereign immunity prevents recovery of damages at all—an issue not implicated in a suit against the City.

Other arguments might also be available to both Lee and the City. Because the issue was not raised or briefed, there is no reason to explore every last detail at this point. My principal point is simple: the protection of private property is a high enough value in the Constitution that I would hesitate long before I concluded that there were no constitutional restrictions on the State's power to seize property and keep it (or to do the equivalent by imposing such a costly condition on the recovery of the property that it is functionally unavailable to the owner). At least when the "second seizure" characterization is apt, I believe that the Fourth Amendment's prohibitions against unreasonable seizures are triggered. To the extent that the Fourth Amendment does not speak to the issue, I am reassured that today's opinion leaves open the possibility of finding in a proper case that a plaintiff might be able to assert a claim under the Fifth Amendment's Takings Clause.

I respectfully concur.

A true Copy:

      Teste:

                _____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*