Rule 23 order filed
June 1, 2023.
Motion to publish granted
June 20, 2023.

2023 IL App (5th) 220542

NO. 5-22-0542

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| KODY G. LEEHY, Individually and on Behalf of Similarly Situated Persons, | ) ) ) | Appeal from the Circuit Court of Jackson County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 18-MR-116 |
| THE CITY OF CARBONDALE, an Illinois Municipal Corporation, | ) ) ) | Honorable Michael A. Fiello, |
| Defendant-Appellee. | ) ) | Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court, with opinion.
Presiding Justice Boie and Justice Moore concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiffs, Kody G. Leehy, individually, and those similarly situated persons, appeal the denial of plaintiffs' complaint seeking a declaratory judgment that the City of Carbondale's ordinance authorizing fees related to driving infractions that resulted in vehicles being towed was facially unconstitutional. For the following reasons, we affirm.

¶ 2                                I. BACKGROUND

¶ 3    On August 6, 2018, plaintiffs filed a complaint seeking a declaratory judgment pursuant to section 2-701 of the Code of Civil Procedure (735 ILCS 5/2-701 (West 2018)) against defendant, the City of Carbondale, claiming that Carbondale Ordinance No. 2012-32, later enacted and

1

codified as section 18-12-15[1] of the City Code of Carbondale, Illinois (City Code of Carbondale § 18-12-15 (eff. Aug. 7, 2012)), was facially unconstitutional and violated his, and the putative class's, right to substantive due process.

¶ 4    The ordinance at issue addresses the towing and impounding of vehicles involved in a crime and provides two levels of administration fees. City Code of Carbondale § 18-12-15(A) (eff. June 30, 2015). Level 1 has a fee of $400; Level 2 has a fee of $200. *Id*. The ordinance states:

> "Motor Vehicle Impoundment: Pursuant to article II, chapter 11 of the Illinois vehicle code, 625 Illinois Compiled Statutes 5/11-208.7, the city of Carbondale (the 'city') shall follow the procedures set forth herein when impounding vehicles (with the exception of those vehicles impounded pursuant to section 18-12-10 of this chapter) and imposing reasonable administrative fees, payable to and collected by the city, related to its administrative and processing costs associated with the investigation, arrest, and detention of an offender, or the removal, impoundment, storage, and release of the vehicle. The administrative fees imposed herein by the city shall be uniform for all similarly situated vehicles and are in addition to any other penalties or fees that may be assessed by a court of law for the underlying violations, or by a person, firm, or entity that tows and stores the impounded vehicle." *Id.* § 18-12-15(B).

¶ 5    The ordinance lists the offenses triggering the Level 1 fee to include DUIs, felonies, and driving with a suspended or revoked license. *Id.* § 18-12-15(C)(1). Infractions triggering the Level

---

[1]On June 30, 2015, Carbondale adopted Ordinance No. 2015-29, which was later codified as section 18-12-15. City Code of Carbondale § 18-12-15 (eff. June 30, 2015). The language in section 18-12-15 remained the same as the 2012 version.

2 fees include misdemeanors and driving with an expired license for over a year. *Id.* § 18-12-15(C)(2). The ordinance provides for an administrative hearing for those parties who wish to contest the administrative fee (*id.* § 18-12-15(E)) and limits the use of the fees "collected under this section" solely for "the purchase of police vehicles and equipment." *Id.* § 18-12-15(G).

¶ 6    Plaintiff, Kody Leehy, alleged that on February 3, 2018, he owned a 2007 BMW that was seized and impounded by Carbondale police pursuant to the above ordinance, following his arrest for DUI. He paid the ordinance's mandatory $400 administrative fee to recover his BMW. The complaint alleged that the ordinance's administrative fees had no reasonable relationship to the actual costs incurred by defendant associated with the seizure, removal, storage, impoundment, and release of a motor vehicle that were in addition to the towing, storage, court costs, and fines. Leehy alleged that the only cost associated with the administrative fee was the preparation of the arresting officer's towed vehicle release. The complaint defined the proposed class as "all persons who paid an administrative fee under the Carbondale ordinance alleged above regarding the seizure and impoundment of a vehicle." Leehy requested a declaration that the Carbondale ordinance was unconstitutional and that defendant be ordered to disgorge the administrative fees paid by plaintiff and those in the class and return those fees to plaintiff and those in the class. On August 7, 2018, plaintiff moved to certify the class.

¶ 7    On August 23, 2019, defendant filed an answer and affirmative defenses to the complaint. Defendant also filed a motion to dismiss, which was denied on May 26, 2020. Thereafter, plaintiff filed a motion for summary determination that the ordinance involved a fee, not a fine, which was granted on August 31, 2020. On March 31, 2021, the trial court granted class certification defining the class as "all person who paid an administrative fee under Carbondale Ordinance 18-12-15 because of seizure or impoundment of a vehicle after September 13, 2013."

3

¶ 8    The case proceeded to hearing on March 30, 2022, and occurred over two days. Plaintiffs called Jeff Davis, finance director for Carbondale, who testified about the funds received from the county as well as the administrative fee. He agreed that the Jackson County clerk paid $26,790.89 to Carbondale from January 31, 2018, to June 28, 2019, under the DUI equipment statute. He further agreed that Carbondale received $14,925.67 under the DUI statute from July 31, 2019, to December 30, 2020. With regard to the statutory compensation, Mr. Davis stated that not everyone paid the fine and not all defendants were found guilty. Mr. Davis also addressed how overtime was paid to the Carbondale police officers.

¶ 9    Plaintiffs next called plaintiff Kody Leehy who testified about his arrest, release, and payment of the administrative fee. He agreed that he was at the police station "a little over an hour" after his arrest. During that time, he was "booked," sat for a while, and then bailed himself out. He stated it took 15 minutes to pay the $400 administrative fee. He further testified that as part of his sentencing order he paid $750 under the statutory DUI equipment fund fine.[2]

¶ 10    Plaintiffs called Officer Benjamin Maether who testified that he was one of two officers on the scene for plaintiff Leehy's arrest. He stated that two officers were required for DUI cases. With regard to Leehy's case, Officer Maether testified that he was on scene for approximately 25 minutes before taking Leehy to the police station. Once they arrived at the station, the suspect was removed from the police vehicle and taken to the processing area where a secondary search was performed. During processing, the suspect was fingerprinted and photographed, the initial paperwork was prepared with the suspect, and the suspect was interviewed about the incident. Officer Maether agreed that processing took between 2 and 2½ hours; however, the length varied. Overtime was incurred when processing was not completed prior to the end of the shift.

---

[2]See 625 ILCS 5/11-501.01(f) (West 2018).

4

¶ 11    Officer Maether testified that non-DUI vehicle stops also required two officers. He stated that typically he would be on the scene for those arrests for 30 minutes to an hour. He estimated that an hour on scene would be the "absolute tops" for a driving on a suspended license unless there were other offenses. Misdemeanors, including the driver having no valid drivers' license, also involved two officers, an arrest, processing, and tow. He also provided his regular hourly wage rate prior to his promotion.

¶ 12    Plaintiffs called Carbondale police officer Mark Murray who testified that he was the assisting officer involved with Leehy's arrest. His tasks that evening included assisting with the field sobriety testing, taking an inventory of Leehy's vehicle, and arranging for the tow. He stated that he did not know how long he was on scene in Leehy's case but stated it usually took 10-20 minutes to inventory the vehicle. The remainder of the time was spent waiting for the tow truck. He stated that a half hour was a good estimate for his participation in Leehy's arrest. A license violation might take an hour at most until he was finished with the suspect, and the assisting officer would oversee the tow and deal with any passengers. He agreed that half an hour for the assisting officer was a fair assessment unless contraband was found, or something else arose, which could lengthen the time.

¶ 13    Plaintiffs called Carbondale police officer Tim Lomax. He agreed that generally it took the assisting officer 30 minutes to get a vehicle towed as long as nothing extenuating occurred. Plaintiffs called Carbondale police officer Levi Ebbert who testified that he heard all the previous testimony and agreed with the statements provided therein.

¶ 14    Plaintiffs called Brandon Kittle, a former Carbondale police officer, and now Illinois State Police officer, who testified that he could make a license violation arrest in 15-20 minutes, depending on how close he was to the scene. He agreed the assisting officer, if needed, would take

about 20-30 minutes. Officer Kittle testified that for a DUI stop, he would question the driver, wait for the assisting officer before performing the sobriety test, and then perform the arrest. This took 15 minutes, and he would then take the suspect back to the police station where there would be an additional 30-45 minutes at the station due to the required 20-minute observation period.

¶ 15    Following Officer Kittle's testimony, the City of Carbondale began presenting its case-in-chief and recalled Jeff Davis to testify. Mr. Davis agreed that petitioner's exhibits 1 and 4 correctly reported the administrative towing fees received for each year and included both the Level 1 and Level 2 fees for each *calendar* year as: 2013—$55,600, 2014—$170,400, 2015—$166,200, 2016—$139,200, 2017—$108,100, 2018—$103,475, 2019—$89,400, 2020—$72,800, 2021—$53,800, and 2022—$2600 (through January 2022). He also agreed the following amounts were received from the Jackson County clerk in each *fiscal* year: 2013—$9662.92, 2014—$22,114.19, 2015—$24,577.81, 2016—$30,736, 2017—$29,057.88, 2018—$17,369.12, 2019—$19,301.64, 2020—$9147.98, 2021—$12,055.58, and 2022—$7056.03 (through January 2022).

¶ 16    Mr. Davis explained that the amount of money the City of Carbondale received from the Jackson County circuit clerk involved all kinds of cases including DUIs, petty traffic cases, robbery, felony, and misdemeanor cases and could involve cases that had nothing to do with vehicles. He explained that the type of case dictated how the money could be spent. DUI money could be spent for DUI enforcement that included police vehicles, breathalyzers, and training. The ordinance funds could be used for police vehicles or police. He stated the City of Carbondale did not receive any funds from the Jackson County clerk for non-DUI tow cases.

¶ 17    With regard to the tow hearings, Mr. Davis testified that the City of Carbondale paid an outside attorney $300 a month, previously $200 a month, to conduct the tow hearings. That payment included both DUI and non-DUI cases. He said the hearings resulted in 11 refunds of the

Level 2 fee and 37 refunds of the Level 1 fee. He further testified that, in addition to the attorney, a police officer and the assistant city attorney were required to attend the hearings. He stated the officer was usually at the hearing for an hour or an hour and a half.

¶ 18    With regard to the Carbondale police officers, Mr. Davis testified that when their benefits and pension were included, along with the City of Carbondale's cost for Medicare, workers' compensation, and health insurance, the officers were making approximately $75 per hour. Mr. Davis also testified about what was included in the City of Carbondale's estimate of the potential costs when the ordinance was enacted. The estimate included four hours for the arresting officer, two hours for assisting officer, one hour for telecommunications, and one hour for records, which amounted to $578.75 for a Level 1 offense. For a Level 2 offense, it was two hours for arresting officer, one hour for the assisting officer, and one hour each for telecommunications and records for a total of $270.09.

¶ 19    Mr. Davis testified that of the 3150 tow fees collected by the city, 997 were DUI-related. The remaining 2153 were not. He agreed the city received $1,117,600 in ordinance fees since the enactment of the 2012 ordinance. Of that amount, approximately $397,000 involved DUI cases, and the remaining $720,000 involved non-DUI cases.

¶ 20    The City of Carbondale called Carbondale Police Chief Stan Reno to testify. He stated that the officer attending the administrative hearing would also require two additional hours getting the files together or possibly four hours if there were multiple hearings scheduled. With regard to DUI cases, Chief Reno testified that it would take approximately four hours to investigate, arrest, detain, process the suspect, and impound the vehicle. He stated it could take even longer depending on the offense and type of investigation necessary. The minimum time would be three hours for the arresting officer managing an efficient DUI, with additional time to prepare the report. The backup

officer would be one-half to a full hour. Chief Reno explained that the time could be increased by traffic issues, injuries, clearing the roadway, or responding to other parties involved in a crash.

¶ 21    Chief Reno stated that an arrest for driving on a suspended or revoked license could take two to three hours, with processing taking another hour. He explained that with a nontypical DUI there could be violent offenses included or a complicated misdemeanor theft where there were a number of evidentiary items associated with the vehicle. He stated there could be multiple offenders all associated with the vehicle, which required identifying people inside the vehicle, conducting the investigation, determining the role the vehicle played in the offense, searches if there was an arrest, collecting necessary evidence, arranging for the tow, and preparing the tow paperwork. He indicated that time on scene could be an hour or an hour and a half depending on how complicated it got, or even longer if crime scene assistance were needed. Chief Reno attempted to provide testimony regarding a recent more complicated case, but plaintiff objected, and the objection was sustained.

¶ 22    The City of Carbondale also recalled Officer Maether. He testified that there were more non-DUI tows than DUI tows and estimated the ratio as two to one. He stated that some non-DUI cases included drug possession. He estimated that an easy DUI, which had no other offenses and nothing unique about the case, required a bare minimum of 1½ hours and was rarely less than 2 hours before the suspect was released with an additional 2 hours after that. He stated that new officers were told that it would take 3½ to 4 hours for an easy DUI with another hour for report writing. Backup officers generally were on scene for 30 minutes.

¶ 23    Officer Maether stated that the easy DUIs were outliers. He explained that a difficult DUI could take anywhere from four to six hours for the arrest processing before writing the report. Those occurred when additional offenses arose within the DUI investigation. There could be drugs,

8

drug searches, evidence related to the searches, field testing, submitting the evidence for testing, or the suspect could be resisting arrest or belligerent. He stated that people would urinate or vomit on themselves, or in the processing area, which also needed to be addressed. If there was an accident involved, it definitely took more time. A fatality took even more time.

¶ 24 Officer Maether testified that an easy, non-DUI violation would be 1½ to 2 hours for the traffic stop, the arrest, processing, and report writing. The backup officer required another 30 minutes. He stated that a non-DUI could be anything from a few hours to over 10 hours, especially if there was a shooting or drugs involved with the vehicle. He stated that he had one case that he was involved with that the initial stop, arrest, and processing took four hours, and eight additional officers were involved. Writing the report for that case took an additional four hours. A violation for driving on a suspended license would be two hours minimum. Homicides involving a vehicle increased the investigation time.

¶ 25 Plaintiffs called Carbondale police officer Brandon Burris. Officer Burris confirmed that he had no overtime in 2019 while he was working as a patrol officer. Thereafter, plaintiffs rested.

¶ 26 The City of Carbondale recalled Officer Levi Ebbert, who stated that an easy DUI took approximately four hours. Those four hours included stopping the vehicle for the traffic infraction, approaching the driver, observing signs of intoxication, driver cooperation with the field sobriety test, and depending on those results, an arrest for DUI. The four hours also included driving the suspect to the police station, completing the arrest processing which included fingerprints, photographs, a DUI form, and interview, and if necessary, a breath sample, reading the warning to motorists, and a 20-minute observation period. Afterwards, an offense report that included every detail of what took place would be prepared. He stated the backup officer would be on scene for approximately 30 minutes.

¶ 27      Officer Ebbert also testified that a difficult DUI could involve a traffic crash with one or multiple vehicles. He explained that if the person needed medical treatment, they would come back to the police department until the person was released and then the arrest process described earlier would occur. If the driver was uncooperative, agitated, annoyed, or needed to use the restroom, it lengthened the time necessary to complete the work. A complicated DUI could take between five to seven hours depending on crashes and medical time. In those instances, the backup officer would be on scene for an hour and a half dealing with traffic control and towing. Officer Ebbert stated that driving on a suspended or revoked license violation would take an hour to an hour and a half to complete for the lead officer and the backup officer would be on the scene for approximately half an hour.

¶ 28      Officer Ebbert testified as to an incident involving a child that was struck by a vehicle and later died. He stated that he had four to five hours on that case just through the investigation phase. The driver was not charged that night and he issued the citation the next day. He also testified about a shots-fired case in which he stopped the vehicle which led to three arrests, recovery of two guns, cannabis, and a towed vehicle. The officer's time on that case was five to six hours. Following Officer Ebbert's testimony, the City of Carbondale rested, the parties provided closing arguments, and the court took the matter under advisement.

¶ 29      On August 9, 2022, the trial court issued an order finding the language of the ordinance was unambiguous and the costs the ordinance intended "to recoup were the City's administrative and processing costs associated with the investigation, arrest, and detention of an offender, or the removal, impoundment, storage, and release of the vehicle." The court then found that costs "which are incurred in every case in which a crime is alleged to have been committed are not unique to cases involving the impoundment and towing a vehicle." The court limited the costs to

10

"the time spent by the responding officer to go to the scene, investigate the alleged offense that would result in the towing and impoundment of the vehicle, effectuate the arrest, transport the defendant to the police department, and process the defendant." The court also found that the costs associated with the backup officer, as well as the time spent by telecommunications personnel and by the record-keepers, were included pursuant to the ordinance language.

¶ 30    The trial court's order also considered whether the City of Carbondale was being reimbursed twice for the same costs and determined it was not. The court considered the statutory assessment provided by section 15-30(3) of the Criminal and Traffic Assessment Act (Act) (705 ILCS 135/15-30(3) (West 2020)) and noted that $350 was placed into the DUI fund for the unit of local government of the arresting agency. The court found that the use of those funds was statutorily dictated pursuant to section 10-5(d)(6) of the Act (*id.* § 10-5(d)(6)) and those funds were to be "used for enforcement and prevention of driving while under the influence" and included the purchase of law enforcement equipment and commodities assisting in the prevention of alcohol-related violence, police officer training and education related to alcohol-related crime, including but not limited to DUI training and police officer salaries involving "hire-back" safety checkpoints, saturation patrols, and liquor store sting operations.

¶ 31    The court noted Jeff Davis's testimony stating that the DUI fund money was used for DUI enforcement-related activities like police vehicles, breathalyzers, and training. The court found that no evidence was presented showing that the City of Carbondale used the DUI fund money to recoup its costs related to the towing or impoundment of vehicles. Thereafter, the court found the DUI fund money was not a factor in determining the reasonableness of the City of Carbondale ordinance fee.

11

¶ 32    The court then addressed the testimony and evidence related to the actual costs associated with the ordinance fee. Based on the hourly rate ascribed to the officers, telecommunications workers, and record-keepers, the court assessed the amount of time for each worker to determine the actual cost. The court found the total cost associated with Level 2 offenses was $90.63. As to Level 1 offenses, the court found the minimum cost was $157.26 and the maximum cost was $312.73. The court found the $312.73 was reasonably related to the $400 Level 1 fee, found the ordinance was not facially unconstitutional, and denied plaintiffs' complaint for declaratory judgment. Plaintiffs timely appealed.

¶ 33                                II. ANALYSIS

¶ 34    On appeal, plaintiffs argue that the trial court erred in computing the minimum time expended by a lead officer making an arrest resulting in the impoundment of a vehicle for the Level 1 ordinance fee. Plaintiffs also argue that the trial court erred by failing to factor in the duplicative statutory remittances received by the City of Carbondale to determine the reasonableness of the Carbondale ordinance fee and further erred by finding there were instances when the prescribed ordinance fee was reasonable and passed constitutional muster.

¶ 35                    A. The Trial Court's Cost Calculations

¶ 36    Findings of fact, following a bench trial, are reviewed to determine whether they are against the manifest weight of the evidence. *Brown v. Zimmerman*, 18 Ill. 2d 94, 102 (1959). "A factual finding is against the manifest weight of the evidence when the opposite conclusion is clearly evident or the finding is arbitrary, unreasonable, or not based in evidence." *Samour, Inc. v. Board of Election Commissioners*, 224 Ill. 2d 530, 544 (2007).

¶ 37    Plaintiffs do not contest the hourly rate ascribed to the officers, telecommunications workers, or record-keepers. The argument relates solely to the trial court's calculation related to

12

the minimum time required by the lead officer for a Level 1 offense. The trial court found the minimum time was 2½ hours for the lead officer and, based on this finding, found the minimum, which included the lead and assisting officers' time as well as the telecommunications and record-keeper employees' time, amounted to $157.26. Plaintiffs argue this was erroneous because plaintiff Leehy "was arrested, and his car impounded within 30 minutes of being stopped for speeding" and therefore the minimum time for the lead officer should be 30 minutes. Plaintiffs argue that the minimum actual cost for a Level 1 ordinance violation would be approximately $70. We disagree.

¶ 38     Plaintiffs' calculations are inconsistent with the evidence as well as the costs included by the trial court, to which plaintiffs raised no argument on appeal. The trial court stated that the costs relevant as to the lead officer included the time spent by the officer to get to the scene, investigate the alleged offense, effectuate the arrest, transport the defendant to the police department, and process the defendant. Plaintiff Leehy testified that it was "a little over an hour" from the time of his arrest at the scene and his release from the police station. Officer Maether testified that he was on scene approximately 30 minutes during the arrest and then took plaintiff Leehy to the police department for processing. Plaintiffs' counsel suggested that it took approximately 45 minutes to process plaintiff Leehy, but Officer Maether disagreed stating that processing usually took two hours. He was unsure of the actual processing time of plaintiff Leehy but agreed with plaintiffs' counsel that they were at 2½ hours for the arrest and processing time based on past experience.

¶ 39     Accordingly, plaintiffs' contention that the minimum actual cost for a Level 1 ordinance violation was $70 has no basis in the record. Conversely, the trial court's finding of 2½ hours for the lead officer was supported by Officer Maether's testimony. As such, we cannot find the trial court's minimum cost for a Level 1 ordinance violation was against the manifest weight of the evidence.

13

¶ 40                              B. Duplicative Remittances

¶ 41    Plaintiffs also argue that the trial court erred in finding the statutory remittances were not duplicative of the impoundment fees associated with a DUI arrest. Plaintiffs claim that the trial court erred by failing to acknowledge that both the statutory remittance and the ordinance fee can be used to purchase vehicles and equipment and therefore are duplicative. Plaintiffs further argue, citing *Carter v. City of Alton*, 2015 IL App (5th) 130544, ¶ 26, that the trial court's failure to recognize the duplicative nature constitutes reversible error. As to this final argument, we clarify that while *Carter* addressed the possibility of duplication between the statutory fee and an ordinance fee, it simply stated that any duplicate funds were "not reasonably related to the purpose of recovering costs." *Id*. No evidence regarding the alleged duplicate funds was presented in *Carter*, as the issue on appeal was the trial court's dismissal of the plaintiff's case pursuant to sections 2-615, 2-619, and 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619, 2-619.1 (West 2012)). *Id*. ¶¶ 13-17, 49. As such, we consider evidence submitted in the case at bar.

¶ 42    We begin by noting that at no time do plaintiffs explain what, if anything, was duplicated by the City of Carbondale's receipt of both the statutory remittance and the ordinance fee. The statutory DUI equipment fund remittance is classified as a fine assessed to individuals who are either convicted or plead guilty to misdemeanor DUI. See 625 ILCS 5/11-501.01(f) (West 2018). Here, as argued by plaintiffs, and found by the trial court, the Carbondale ordinance is a fee. "A 'fee' is defined as a charge that 'seeks to recoup expenses incurred by the state,' or to compensate the state for some expenditure in prosecuting the defendant." *People v. Graves*, 235 Ill. 2d 244, 250 (2009) (quoting *People v. Jones*, 223 Ill. 2d 569, 582 (2006)). "A fine, however, is punitive in nature and is a pecuniary punishment imposed as part of a sentence on a person convicted of a

14

criminal offense." (Internal quotation marks omitted.) *Id*. The underlying purposes of the statutory remittance and the ordinance are different, and therefore are not duplicative.

¶ 43 More importantly, plaintiffs submitted no evidence revealing that the City of Carbondale used the statutory remittance to recoup "the administrative and processing costs associated with the investigation, arrest, and detention of an offender, or the removal, impoundment, storage, and release of the vehicle." City Code of Carbondale § 18-12-15(B) (eff. June 30, 2015). In fact, the evidence revealed the opposite as Jeff Davis testified that the City of Carbondale spent the statutory DUI fund money received from the Jackson County clerk on police vehicles, breathalyzers, and training.

¶ 44 While it is undisputed that a DUI arrest may result in two streams of revenue to the City of Carbondale, there must be evidence that the two streams of revenue are duplicative. Here, the Carbondale ordinance relates to more than just DUI arrests. The ordinance is premised on two levels of motor vehicle violations, one of which (Level 2) does not include DUIs. City Code of Carbondale § 18-12-15(A), (C)(2) (eff. June 30, 2015). Level 1, which does involve DUIs, also includes numerous felonies unassociated with a DUI that still require towing of the vehicle. *Id.* § 18-12-15(C)(1). Review of the evidence related to the first 42 individuals to whom the Carbondale ordinance fee applied in 2013 reveals that two vehicles were sold resulting in no fee to the City of Carbondale. Of the remaining 40 individuals, 12 incurred the $200 Level 2 fee (which did not involve a DUI), 14 incurred the $400 Level 1 fee for a DUI, and 14 incurred the $400 Level 1 fee for reasons that did not include a DUI. Therefore, of the $13,600 collected under the towing ordinance from these 40 individuals, $5600 stemmed from DUIs and the remaining $8000 was not attributable to DUIs. While evidence was presented showing the amounts the City of Carbondale received from the statutory remittance for DUIs from the Jackson County clerk, no evidence was

15

submitted showing any correlation between the funds the City of Carbondale received in towing ordinance fees—solely for DUI—with the amounts the City of Carbondale received pursuant to the statutory DUI equipment fund remittance.

¶ 45    Instead of more specifically addressing the evidence, plaintiffs contend that the classification of where the funds are deposited from either the ordinance towing fee or the DUI equipment fund fine is irrelevant because "police officers' salaries must be paid, and equipment purchased irrespective of the label of the account into which the revenue is placed." We disagree. Even if we presume that some portion of the monies received from both the DUI equipment statutory remittance fund and the Carbondale towing ordinance fund is used to purchase police vehicles or equipment, there was no evidence submitted that the City of Carbondale had sufficient funds solely from the DUI statutory remittance fund to make the said purchases or that Carbondale's towing ordinance fees created a windfall or surplus of funds for Carbondale's police department for them to be classified as duplicative.

¶ 46    While plaintiffs contend the "prescribed $400 impoundment fees associated with a DUI arrest are never reasonable because they duplicate the statutory remittances," no such evidence was submitted to support the contention. Here, at best, the evidence revealed that the amounts received by the City of Carbondale, pursuant to both the statutory remittance and the towing ordinance, would potentially be *additive*, as the funds received from both fees could be used for police vehicles and equipment. However, no evidence was presented to support plaintiffs' claim that the fees were *duplicative*. Accordingly, we affirm the trial court's finding that the amounts the City of Carbondale received pursuant to the statutory remittance were not relevant in determining whether the ordinance fees were reasonable.

16

¶ 47                    C. Constitutionality of the Ordinance

¶ 48    Finally, plaintiffs argue that the trial court erred in finding the City of Carbondale ordinance was not facially unconstitutional. The constitutionality of a municipal ordinance is a question of law reviewed *de novo*. *Carter*, 2015 IL App (5th) 130544, ¶ 18. The parties agree the issue is subject to a rational basis test, which means the ordinance will pass constitutional muster if it is rationally related to a legitimate governmental interest and is not arbitrary or discriminatory. *Id.* ¶ 19.

¶ 49    "A fee is rationally related to this purpose if the amount charged bears some reasonable relationship to the actual costs it is intended to recoup." *Id.* (citing *Jones*, 223 Ill. 2d at 585). The fee need not represent the exact costs incurred, but it " 'must at least *relate*' to those actual costs." (Emphasis in original.) *Id.* (quoting *Jones*, 223 Ill. 2d at 585). To demonstrate that an ordinance is facially invalid, plaintiffs "must demonstrate that there are no circumstances under which the ordinance[ ] would be constitutional." *Id.* ¶ 20.

¶ 50    On appeal, plaintiffs argue that the Level 1 and Level 2 fees "are arbitrary and discriminatory in that they seek recoupment of costs that go well beyond what is reasonably related to the impoundment of a vehicle." However, the trial court's calculations, to which no argument was raised on appeal, revealed that the maximum cost for the Level 1 ordinance towing fee was $312.73 and the cost for a Level 2 ordinance fee was $90.63. As the Level 1 ordinance towing fee is $400 and the Level 2 ordinance fee is $200, we cannot disagree with the trial court's finding that there are circumstances in which the fee charged under the ordinance is reasonably related to the cost incurred.

¶ 51    Plaintiffs argue that the Level 2 fee was nearly twice that of the cost and the Level 1 fee was nearly five times the actual cost of the service. We note, however, plaintiffs' argument as to

17

the Level 1 fee was based on the erroneous claim that the minimum cost was $70, for which no support in the record was found. Further, plaintiffs cite no case law in support of the argument that a fee twice the actual cost of the service provided has ever been found facially unconstitutional. As noted by the City of Carbondale, courts have upheld fees over five times greater than the actual cost. *A&H Vending Service, Inc. v. Village of Schaumburg*, 168 Ill. App. 3d 61, 65-66 (1988). Here, the burden of proof was upon plaintiffs to show a lack of any reasonable relation between the fee and the cost of the service, and in our judgment, they failed to sustain that burden.

¶ 52                                   III. CONCLUSION

¶ 53    For the foregoing reasons, we affirm the trial court's denial of the plaintiffs' complaint for declaratory judgment.


¶ 54    Affirmed.

*Leehy, Kody G., Individually and on Behalf of Similarly Situated Persons. v. The City of Carbondale, an Illinois Municipal Corporation,* **2023 IL App (5th) 220542**

| | |
|---|---|
| **Cite as:** | *Leehy, Kody G., Individually and on Behalf of Similarly Situated Persons v. The City of Carbondale, an Illinois Municipal Corporation*, 2023 IL App (5th) 220542 |
| **Decision Under Review:** | Appeal from the Circuit Court of Jackson County, No. 18-MR-116; the Hon. Michael A. Fiello, Judge, presiding. |
| **Attorneys for Appellant:** | G. Patrick Murphy, of Murphy & Murphy LLC, of Marion; Brandon C. Mayberry, of Law Offices of Brandon C. Mayberry, of Marion, for appellant |
| **Attorneys for Appellee:** | Steven C. Giacoletto, of Giacoletto Law Firm, of Collinsville; Leonard J. Snyder, of City of Carbondale, of Carbondale, for appellee |