NOTICE

Decision filed 06/02/25, corrected 6/2/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240665-U

NO. 5-24-0665

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| MARK SCHMIDT, on Behalf of Himself and All Others Similarly Situated, | ) ) ) | Appeal from the Circuit Court of Madison County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 11-L-1306 |
| THE CITY OF COLLINSVILLE, | ) ) | Honorable Andrew K. Carruthers, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE McHANEY delivered the judgment of the court.
Justices Moore and Sholar concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where Mark Schmidt could not establish a facial constitutional challenge or a substantive due process challenge, we affirm the order dismissing his complaint; where the City of Collinsville provided an administrative process by which Mark Schmidt could have pursued a refund of the fee imposed, his claim is barred by the voluntary payment doctrine.

¶ 2    The plaintiff, Mark Schmidt (Schmidt),[1] filed a class action complaint against the defendant, the City of Collinsville (Collinsville), challenging the constitutionality of Collinsville's impoundment ordinance, which requires violators to pay an administrative processing fee when their vehicle is used in the commission of certain offenses. The trial court dismissed the complaint

_____

[1]The original class action complaint against Collinsville was filed by Amy Kopesky, who later determined that she would not be able to continue to serve as the class representative, and Mark Schmidt was substituted on May 21, 2012.

1

on October 25, 2013, and Schmidt appealed. On May 4, 2015, this court reversed and remanded, finding that Collinsville failed to allege affirmative matter that would preclude the case from going forward, and assuming that the allegations of Schmidt's complaint were true, the complaint stated a basis upon which relief could be granted. *Carter v. City of Alton*, 2015 IL App (5th) 130544. Thereafter, Schmidt amended his complaint four times. On February 12, 2024, Collinsville filed a motion to dismiss and to strike Schmidt's final amended complaint and a separate motion for summary judgment as to count I of Schmidt's complaint. The trial court granted Collinsville's motion to dismiss and to strike on April 26, 2024. The trial court did not rule upon Collinsville's summary judgment motion. Schmidt appeals from the dismissal of his complaint. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4                                   A. The Ordinance

¶ 5     In December 2011, Collinsville added Chapter 10.12, its Impoundment of Motor Vehicles ordinance, to the Collinsville Municipal Code. In its prefatory statements, Collinsville stated that it "tows and impounds private motor vehicles when there are concerns about the condition of the driver or because of the nature of certain pending criminal charges"; that "the process associated with private motor vehicles that have been towed and/or impounded utilizes City resources in the form of Police Department personnel time"; that "in order to recover the expenditure of resources, it is in the best interest of the City to adopt rules and regulations associated with the impoundment of private motor vehicles"; and that "Illinois Public Act 97-109 has provided for the adoption into law Section 11-208.7 of the Illinois Vehicle Code (625 ILCS 5/11-208.7), effective January 1, 2012, thereby necessitating this amendatory ordinance."

2

¶ 6    The ordinance established two levels of administrative fees, the assessment of which is based upon the underlying criminal charge. Collinsville Municipal Code § 10.12.010 (eff. Dec. 13, 2011). A Level 1 administrative fee is $500, while a Level 2 administrative fee is $150. *Id.*

¶ 7    Section 10.12.020 of the code states: "Any motor vehicle operated with the express or implied permission of the owner of record, that is used in connection with the following violations, shall be subject to seizure and impoundment by the City for a Level 1 administrative fee *** in addition to any towing and storage fees ***." *Id.* § 10.12.020. Driving under the influence of alcohol and/or drugs is listed as a violation authorizing impoundment. *Id.* (citing 625 ILCS 5/11-501 (West 2010)).

¶ 8    "Whenever a police officer has reason to believe that a motor vehicle is subject to seizure and impoundment ***, the police officer shall provide for the towing of the motor vehicle to a facility approved by the City." *Id.* § 10.12.030(A). Section 10.12.030(B) provides:

> "The police officer shall notify any person identifying himself as the owner of the motor vehicle or any person who is found to be in control of the motor vehicle at the time of the alleged violation, if there is such a person, of the fact of the seizure and of the motor vehicle owner's right to request an administrative hearing to be conducted under this section." *Id.* § 10.12.030(B).

¶ 9    Collinsville provides detailed information about notice of an administrative hearing in its ordinance. Notice of the hearing must be served upon the "owner, lessee, and any lien holder of record" by first class mail; must "[b]e served upon interested parties within 10 days after a vehicle is impounded by the City"; and must list the date, time, and location of the administrative hearing, which must be scheduled and convened within 45 days after the notice of hearing was mailed. *Id.* § 10.12.035(A), (B), (C). If the owner wants a hearing, then he or she must timely file a written

3

request with the Collinsville Chief of Police. *Id.* § 10.12.040(B). "If, after a hearing, the hearing officer does not determine by a preponderance of the evidence that the motor vehicle was used in such a violation, the hearing officer shall enter an order finding for the owner and for the return of the motor vehicle." *Id.* § 10.12.040(C).

¶ 10    The Collinsville Code of Ordinances states that an impounded motor vehicle shall remain impounded until the administrative fee is paid to the city and all applicable towing fees are paid to the towing agent; or the owner posts a bond with the police department in an amount equal to the administrative fee and all towing fees are paid to the towing agent. *Id.* § 10.12.050(A)(i), (ii). However, if a violation of this chapter of the Collinsville Municipal Code is not established by a preponderance of the evidence, the bond will be returned to the person who posted it. *Id.* § 10.12.060. Moreover, if there is a not guilty verdict entered on the underlying charges that resulted in the impoundment of the vehicle, "any administrative fees or posted bonds obtained by the City shall be refunded to the paying party." *Id.* § 10.12.090.

¶ 11    The ordinance expressly provides that the "towing or storage company shall be entitled to receive a reasonable fee from the owner or person entitled to possession of any such motor vehicle prior to the release of the motor vehicle." *Id.* § 10.12.080(B). The ordinance also states that the "[towing and storage] fees in this section shall be in addition to any fee levied or assessed against the owner or operator of said motor vehicle by reason of violation of any ordinance or statute and any arrest which may have resulted from such violation" *Id.* § 10.12.080(C).

¶ 12                    B. Factual and Procedural Background

¶ 13    The owner of the car involved in the DUI arrest of Schmidt was Michelle Bogucki (Bogucki) of Ballwin, Missouri. At the time of the arrest, Schmidt and Bogucki were in a relationship. Bogucki paid the $500 impoundment ordinance fee, and the Collinsville Police

4

Department provided her with the receipt and information related to requesting an administrative hearing. Schmidt later testified in his deposition that he provided Bogucki with the $500 she used to pay the fee. Collinsville records reflect that neither Schmidt nor Bogucki requested an administrative hearing pursuant to section 10.12.40(B) of the Collinsville Municipal Code.

¶ 14 On December 6, 2011, Schmidt filed his complaint against Collinsville alleging that he was arrested for DUI, that his car was towed and impounded pursuant to Collinsville's ordinance, and that he was required to pay the mandated administrative fee. He challenged the administrative fee alleging that the "tow fees" require only a minimal amount of time and expense by Collinsville Police Department employees to write a receipt for payment of the required tow fee.

¶ 15 On June 1, 2012, the trial court entered an order directing Schmidt to state if he was challenging the ordinance facially or as applied. In response, Schmidt filed his amended complaint on July 26, 2012, to more specifically allege a facial challenge to the constitutionality of Collinsville's ordinance.

¶ 16 Collinsville filed a motion to dismiss and strike Schmidt's complaint on September 28, 2012, pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2010)). On October 25, 2013, the trial court granted Collinsville's motion to dismiss explaining that substantive due process does not stop a municipality from imposing a civil penalty for using a vehicle or allowing a vehicle to be used in the commission of certain offenses. In dismissing the amended complaint, the trial court heavily relied upon *People v. Ratliff*, 282 Ill. App. 3d 707, 713 (1996) (where the appellate court found that a $500 impoundment charge labeled as a fine constituted a fee because it was a "reasonable proxy for the likely actual administrative costs incurred").

¶ 17 Schmidt appealed the dismissal of his amended complaint to this court. We reversed and remanded stating that the trial court must take the allegations in the complaint as true; that Schmidt

alleged facts that could potentially lead to a legal conclusion that the fees imposed by Collinsville's ordinance violate substantive due process; and that he had not yet had an opportunity to fully conduct discovery. *Carter*, 2015 IL App (5th) 130544, ¶¶ 45, 48.

¶ 18     Schmidt filed the final version of his complaint on November 7, 2022. On February 12, 2024, Collinsville filed its motion to dismiss and strike the amended complaint. Collinsville also filed a motion for summary judgment on the same date. On April 26, 2024, the trial court granted the motion to dismiss. The trial court did not rule on the motion for summary judgment. Schmidt filed his notice of appeal on May 22, 2024.

¶ 19          C. Facts Contained in Collinsville's Motion for Summary Judgment

¶ 20     Collinsville's motion for summary judgment was supported by documentation of the hours spent on average by Collinsville police officers and Drug Recognition Evaluation (DRE) experts during the investigation, arrest, and detention of an offender, as well as hourly and overtime rates of pay for these officers and DRE experts.

¶ 21     Trent Ross, a Collinsville police officer, provided his affidavit dated February 5, 2024. As of that date. Ross stated that he had served as the lead/arresting officer for 294 DUIs and had served as the DRE expert for 54 DUIs, 19 of which involved blood draws. Of the 19 blood draws, 9 of those cases involved overtime hours. Of the remaining 35 DRE-involved DUI charges, 16 involved overtime hours. He stated that he also served as the backup officer in an average of 10 DUIs per year and served as the acting sergeant approximately 40 times over his career. Ross explained that each DUI involved three officers—the lead officer, a backup officer, and the acting sergeant. For a DUI, police officer time totaled an average of 6.75 to 7.75 hours. Ross also stated that a DRE expert spent an average of 3.75 hours on each investigation, arrest, and detention of a DUI offender.

6

¶ 22    Ross explained that a DRE is sometimes required in a DUI investigation "because not all DUIs pursuant to section 11-501 of the Illinois Vehicle Code (625 ILCS 5/11-501 (West 2010)) involve alcohol, but instead may be the result of other illegal intoxicants, compounds, and drugs." A DRE can draw blood from a suspect, and if that becomes necessary, the time for a blood draw adds about 45 minutes on average to the minimum amount of DRE time. A DRE's report writing time ranges from 1.5 to 2.5 hours. As Ross was the only DRE employed by the Collinsville Police Department, he was often called in when he was not scheduled to work, and thus was paid overtime wages.

¶ 23    Ross provided the following list of factors that cause more than the average amount of hours to be expended with a person charged with DUI in association with the investigation, arrest, and detention of an individual:

1. suspect's cooperation;

2. aggressiveness of the suspect;

3. illness or other health issues of the suspect;

4. responding to other persons if an accident occurred;

5. clearing the roadway;

6. vehicle inventory;

7. search of vehicle;

8. investigation of license status;

9. use of canine; and

10. DRE evaluation.

¶ 24    Ross also listed the Collinsville Police Department duties associated with the investigation, arrest, and detention of a DUI offender:

7

1. initial sighting and stopping of suspect;

2. initial determination of DUI suspicion;

3. field sobriety testing;

4. portable breath test;

5. interaction with the suspect;

6. arrest of suspect;

7. interviews/interactions with other persons at the scene;

8. securing parties and scene;

9. search of suspect's vehicle;

10. clearing of vehicles and road if a crash was involved;

11. transport of suspect to police station;

12. booking of suspect;

13. evaluation and chemical testing of suspect at the police station;

14. possible conference with DRE;

15. inventory of contents of suspect's vehicle;

16. detention of suspect and wellness checks at the station; and

17. dictation of report, review, revisions, and conference with sergeant.

¶ 25    Two Collinsville Police Department deputy clerks, Yolanda Harris and Shelia Gorka, filed affidavits on February 5, 2024, outlining the average number of DUIs processed per year and the amount of time spent processing the paperwork. Both clerks indicated that the average number of DUIs Collinsville processed each year was 24. For each DUI, clerical duties involved .75 of one hour.

¶ 26    Dustin Ziebold, Collinsville's chief financial officer, and Amanda Guntrum, Collinsville's accounting manager, filed their affidavits on February 5, 2024, establishing their familiarity with and knowledge of the specific police department personnel costs associated with DUIs.

¶ 27    From all information obtained through affidavits and deposition testimony, Collinsville's attorney listed the minimum and average personnel charges for a DUI in the motion for summary judgment. The minimum personnel costs associated with a DUI charge for the lead officer, backup officer, sergeant, and deputy clerk ranged from $285 to $350.22, and if a DRE expert was required, the total minimum personnel costs would be $480.66 to $545.88. The actual average personnel costs were higher, with $477.56 to $542.78 without a DRE expert and $722.14 to $787.36 with a DRE expert.

¶ 28                                    II. ANALYSIS

¶ 29    Collinsville filed its motion to dismiss and strike final amended class action complaint pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2020)). The motion to dismiss was filed pursuant to section 2-619 of the Code (*id.* § 2-619) and the motion to strike was filed pursuant to section 2-615 of the Code (*id.* § 2-615). Collinsville also filed a motion for summary judgment as to count I of Schmidt's complaint pursuant to section 2-1005 of the Code. *Id.* § 2-1005.

¶ 30    Section 2-619.1 allows a party to combine a section 2-615 motion to dismiss based upon pleadings (*id.* § 2-615) with a section 2-619 motion to dismiss based upon certain defects or defenses (*id.* § 2-619), and/or a motion for summary judgment (*id.* § 2-1005). On appeal, a trial court's dismissal of a complaint pursuant to section 2-619.1 is reviewed *de novo*. *Madison County v. Illinois State Board of Elections*, 2022 IL App (4th) 220169, ¶ 42 (citing *Morris v. Harvey Cycle & Camper, Inc.*, 392 Ill. App. 3d 399, 402 (2009)). The appellate court "may affirm the dismissal

9

on any basis supported by the record." *Id.* (citing *Stoll v. United Way of Champaign County, Illinois, Inc.*, 378 Ill. App. 3d 1048, 1051 (2008)). Moreover, "[s]ection 2.619.1 motions may be granted where a defendant raises an affirmative defense or other matter that defeats the plaintiff's claim as a matter of law or based on an easily proved issue of fact. *Walworth Investments-LG, LLC v. Mu Sigma, Inc.*, 2022 IL 127177, ¶ 38.

¶ 31 On appeal, Schmidt argues that the trial court erred in dismissing his complaint because Collinsville's administrative fee was not rationally related to a legitimate legislative purpose; that Collinsville's impoundment of motor vehicles ordinance violated his substantive due process rights; and that the voluntary payment doctrine did not bar him from seeking a refund of the fees he paid.

¶ 32                                A. Facial Challenge

¶ 33 Schmidt does not argue that the ordinance impacts his fundamental rights. Thus, the proper test for a substantive due process claim is the rational basis test. *People v. Pepitone*, 2018 IL 122034, ¶ 14 (quoting *People v. Rizzo*, 2016 IL 118569, ¶ 45). Municipal ordinances—just like statutes—are presumed valid. *City of Chicago v. Pooh Bah Enterprises, Inc.*, 224 Ill. 2d 390, 406 (2006). Thus, courts must uphold the constitutionality of ordinances if it is reasonably possible to do so. *Id.*

¶ 34 The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. *People v. Jones*, 223 Ill. 2d 569, 580 (2006). If the language of the statute is clear and unambiguous, courts must not resort to aids of statutory construction. *Id.* at 580-81. The ordinance "will pass constitutional muster if it is rationally related to a legitimate governmental interest and is not arbitrary or discriminatory." *Leehy v. City of Carbondale*, 2023 IL App (5th) 220542, ¶ 48 (citing *Carter*, 2015 IL App (5th) 130544, ¶ 19).

10

¶ 35 "If there is any conceivable basis for determining that the statute is rationally related to a legitimate state interest, the law must be upheld." *People v. Gray*, 2017 IL 120958, ¶ 61 (citing *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 126 (2004); *People ex rel. Lumpkin v. Cassidy*, 184 Ill. 2d 117, 124 (1998)). To apply the rational basis test, "a court must first ascertain the purpose of the statute to determine whether the statute's provisions reasonably implement that purpose." *Gray*, 2017 IL 120958, ¶ 62 (citing *In re M.A.*, 2015 IL 118049, ¶ 55). As the Illinois Supreme Court stated:

> "In applying the rational basis test, we must identify the public interest that the statute was intended to protect, determine whether the statute bears a reasonable relationship to that interest, and verify whether the means chosen to protect that interest are reasonable. [Citation.] As long as there is a reasonably conceivable set of facts showing that the legislation is rational, it must be upheld. [Citation.] Whether the statute is wise or sets forth the best means to achieve the desired result are matters for the legislature, not the courts." *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 29.

¶ 36 "A facial challenge to the constitutionality of a legislative enactment is the most difficult challenge to mount successfully [citation], because an enactment is facially invalid only if no set of circumstances exists under which it would be valid." *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 305-06 (2008); see also *People v. Thompson*, 2015 IL 118151 (citing *People v. Garvin*, 219 Ill. 2d 104, 117 (2006)). "The fact that the enactment could be found unconstitutional under some set of circumstances does not establish its facial invalidity." *Napleton*, 229 Ill. 2d at 306. Moreover, even if we were to find that that language of the ordinance is unclear or ambiguous, a

11

court "will resolve any doubt as to the statute's construction in favor of its validity." *People v. One 1998 GMC*, 2011 IL 110236, ¶ 20 (citing *People v. Boeckmann*, 238 Ill. 2d 1, 6-7 (2010)).

¶ 37    We must determine if the $500 fee in Collinsville's ordinance is rationally related to a legitimate legislative purpose and is neither arbitrary nor unreasonable. *Napleton*, 229 Ill. 2d at 307. In *Carter v. Alton*, we stated: "A fee is rationally related to [the interest the ordinance is meant to advance] if the amount charged bears some reasonable relationship to the actual costs it is intended to recoup." *Carter*, 2015 IL App (5th) 130544, ¶ 19. "The fee need not represent the precise costs incurred by the cities," but "it 'must at least *relate*' to those actual costs." (Emphasis in original.) *Id.* (quoting *Jones*, 223 Ill. 2d at 585).

¶ 38    Schmidt argues that any fee Collinsville is entitled to recover must solely relate to the costs incurred by Collinsville in towing or impounding the vehicle. He argues that the $500 fee is unjustified because Collinsville does not actually tow or impound the vehicle. The trial court dismissed this argument as illogical and contrary to the plain language of the ordinance because "[t]he Ordinance specifically states that the 'administrative fee' of $500 *** is in addition to 'any towing and storage fees.' " The court also noted that the determination to "impound" a vehicle in relation to a DUI was within the Collinsville Police Department's province.

¶ 39    The trial court stated that Collinsville enacted its Ordinance No. 4464 "based upon the intention of recovering the administrative costs associated with the towing and impoundment of vehicles under certain circumstances." The court specifically outlined the costs Collinsville could incur incident to the process of seizing, towing, and impounding motor vehicles involved in the commission of a crime as follows:

"the apprehension and arrest of the driver and/or passengers, which may involve subduing the driver and/or the passengers who are resisting the officer(s) on the scene and

12

transporting the driver and/or passengers either to a police station or other locations. The process also includes the search and inventory of the vehicle. The cost may include not only the utilization and employment of police officers but other emergency responders such as fire department personnel, including paramedics and ambulance drivers. It may involve public works employees to clear the street, disentangle the vehicle from wreckage, trees, or other infrastructure, and to secure the area. The city personnel must further be cognizant of protecting personal property that may be within the subject vehicle. There may be passengers, children or pets that require special attention from the city personnel in the process of towing and storing the vehicle in question."

Finally, the trial court referenced the city's involvement with the removal, impoundment, storage, and release of the vehicle. As the trial court noted, given the processes involved in the towing and impoundment of vehicles related to the arrest of drivers for certain criminal offenses, the costs incurred could greatly exceed the $500 administrative fee imposed.

¶ 40    Schmidt argues that Collinsville would incur most of the costs irrespective of seizing, towing, and impounding a vehicle, and suggested that the only work done by Collinsville to justify an administrative fee would be related to collecting the $500 fee and issuing a receipt for that payment. The trial court found this argument to be meritless. In support, the court cited to this court's opinion in *Leehy v. City of Carbondale*, 2023 IL App (5th) 220542, noting that the appellate court concluded that the administrative costs incurred by Carbondale supported its $400 administrative fee: "If such costs incurred by the City of Carbondale sustained a similar $400 charge, this Court can and does conclude that either the $500 or $150 administrative fee imposed by *** Collinsville is reasonable and rationally related to the legislative purpose of recovering some of those costs."

13

¶ 41 The trial court also found support that the administrative fee bore a reasonable relationship to Collinsville's actual costs in the sworn affidavits attached to Collinsville's motion for summary judgment. Those affidavits provided detail regarding the number of police officers and deputy clerks who worked on each DUI case, in addition to the officers' rates of pay. We agree with the trial court's conclusion and find that the fee imposed by this ordinance "bears some reasonable relationship to the actual costs it is intended to recoup." *Carter*, 2015 IL App (5th) 130544, ¶ 19. The administrative processing fee listed in this ordinance substantially correlates to the actual administrative costs incurred by Collinsville resulting from the arrest. *Id.* As our review is *de novo*, consideration of the affidavits supporting Collinsville's summary judgment motion, although not ruled upon by the trial court, is allowable. *Madison County*, 2022 IL App (4th) 220169, ¶ 42 (citing *Stoll*, 378 Ill. App. 3d at 1051).

¶ 42 We conclude that Collinsville's ordinance—designed to recover costs and expenses incurred by its police department in handling criminal investigations that culminate in an arrest, towing, and impoundment of the suspect's vehicle—serves a legitimate purpose and is valid. *Gray*, 2017 IL 120958, ¶ 61 (citing *Village of Lake Villa*, 211 Ill. 2d at 126; *Lumpkin*, 184 Ill. 2d at 124); *Hayashi*, 2014 IL 116023, ¶ 29. We do not find that the ordinance is facially invalid as Schmidt cannot establish there is "no set of circumstances *** under which it would be valid." *Napleton*, 229 Ill. 2d at 305. As the trial court noted, Collinsville's ordinance provided a process for an administrative hearing after which the administrative officer could "order the immediate return of the owner's vehicle or cash bond without towing or impoundment fees." The trial court's order dismissing Schmidt's complaint was appropriate as we find there was no genuine issue of material fact regarding the legitimacy of Collinsville's impoundment of motor vehicles ordinance. 735 ILCS 5/2-619 (West 2020).

14

¶ 43                                    B. Substantive Due Process

¶ 44    Schmidt next argues that the trial court erred in finding that he failed to establish a violation of his substantive due process rights. His argument is based on the theory that the ordinance only authorizes Collinsville to recover administrative expenses for writing or printing the receipt for the fees charged. He argues that the $500 fee for printing a receipt bears no reasonableness to the actual expenses.

¶ 45    Substantive due process prevents a governmental body from taking certain action even if it provides appropriate procedural safeguards. *LMP Services, Inc. v. City of Chicago*, 2017 IL App (1st) 163390 (quoting *In re Marriage of Miller*, 227 Ill. 2d 185, 197 (2007)); *Casanova v. City of Chicago*, 342 Ill. App. 3d 80, 91 (2003). Substantive due process protects certain fundamental rights "that are deeply rooted in our nation's history and traditions." *In re Amanda D.*, 349 Ill. App. 3d 941, 946 (2004) (citing *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997)). "When a fundamental right is at issue, governmental action that impairs the right must be narrowly tailored to advance a compelling state interest." *Id.* (citing *Washington*, 521 U.S. at 721). The United States Supreme Court urges the exercise of caution when determining if a legislative action gives rise to a cause of action under substantive due process. *Washington*, 521 U.S. at 720.

¶ 46    The first step in analyzing a substantive due process claim is to "identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). If a state action does not implicate a fundamental right, then it cannot implicate substantive due process. *Idris v. City of Chicago*, 552 F.3d 564, 566 (7th Cir. 2009) (finding that a $90 fine for a traffic infraction, which constituted a property interest, is too modest to implicate a fundamental right).

¶ 47    Schmidt argues that Collinsville infringed upon his constitutional right as follows: "The amount chosen for the fee in this case lacks any reasonableness whatsoever, and the City has failed

to establish reasonableness." Again, he contends that the $500 fee charged was solely for the costs incurred by Collinsville in presenting him with the receipt.

¶ 48     The trial court concluded that Schmidt failed to establish that Collinsville implicated a fundamental right because the challenge involved only the deprivation of a property interest. *Idris*, 552 F.3d at 566. A valid substantive due process claim necessarily requires a plaintiff to "allege that the decision was arbitrary and irrational and must show either a separate constitutional violation or the inadequacy of state law remedies." *PBM Stone, Inc. v. Palzer*, 251 Ill. App. 3d 390, 394-95 (1993). "[W]hen a substantive due-process challenge involves only the deprivation of a property interest, a plaintiff must show 'either the inadequacy of state law remedies or an independent constitutional violation' before the court will even engage in this deferential rational-basis review." *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003). "[I]n cases where the plaintiff complains that he has been unreasonably deprived of a state-created property interest, without alleging a violation of some other substantive constitutional right or that the available state remedies are inadequate, the plaintiff has not stated a substantive due process claim." (Internal quotation marks omitted.) *New Burnham Prairie Homes, Inc. v. Village of Burnham*, 910 F.2d 1474, 1481 (7th Cir. 1990).

¶ 49     The trial court ultimately concluded that Schmidt's substantive due process claim was defeated because he had adequate administrative remedies available within Collinsville's ordinance—to request an administrative hearing. Schmidt correctly counters that the language of Collinsville's ordinance only allows the administrative process to address the propriety of the seizure and impoundment and does not allow him to challenge the fee on substantive due process grounds. However, the ordinance provides a pathway to recover all or part of the $500 fee, which is the relief that Schmidt desires.

16

¶ 50   We find that Schmidt has failed to make a claim of a valid substantive due process violation. Because Schmidt's substantive due process challenge only involves deprivation of a property interest, he must either establish that state law remedies are inadequate or state an independent constitutional violation. *Lee*, 330 F.3d at 467; *Palzer*, 251 Ill. App. 3d at 394-95. We have already concluded that the ordinance could not legitimately be interpreted to mean that the $500 fee was solely for Collinsville's provision of a receipt. Thus, we do not find that the fee is arbitrary or irrational. *PBM Stone*, 251 Ill. App. 3d at 395-95. Additionally, Schmidt has not established a separate constitutional violation or established that there were no adequate state remedies available. *Id.* The trial court's order dismissing his complaint was correct as we agree that at most Schmidt is claiming deprivation of a property interest, and he failed to establish a substantive due process violation. *Lee*, 330 F.3d at 467. Dismissal was proper as a matter of law. 735 ILCS 5/2-619 (West 2020); *Parks v. Kownacki*, 193 Ill. 2d 164, 175 (2000) (citing *Doyle v. Holy Cross Hospital*, 186 Ill. 2d 104, 109-10 (1999)).

¶ 51                          C. Voluntary Payment Doctrine

¶ 52   The trial court also found that dismissal of Schmidt's amended complaint was warranted pursuant to the voluntary payment doctrine, stating that the Collinsville ordinance contained a method to seek a refund of the fee, and Schmidt chose not to utilize that remedy.

¶ 53   The voluntary payment doctrine is based in common law. The Illinois Supreme Court explained this doctrine in its 1902 case, *Yates v. Royal Insurance Co.*, 200 Ill. 202, 206 (1902), as follows:

> "The principle is an ancient one in the common law and is of general application. Every
> man is supposed to know the law, and, if he voluntarily makes a payment which the law
> would not compel him to make, he cannot afterwards assign his ignorance of the law as the

17

reason why the state should furnish him with legal remedies to recover it back. Money voluntarily paid to another under a mistake of the law, but with knowledge of all the facts, cannot be recovered back."

¶ 54   This common law doctrine remains "universally recognized" today. *King v. First Capital Finance Corp.*, 215 Ill. 2d 1, 27-28 (2005). "The rule is that in the absence of fraud, misrepresentation, or mistake of fact, money voluntarily paid under a claim of right to the payment, with full knowledge of the facts by the person making the payment, cannot be recovered unless the payment was made under circumstances amounting to compulsion." (Internal quotation marks omitted.) *Id.* at 30. Unless there is a statute which permits recovery for the payment of these fees "improperly assessed by a municipality or utility," that person is not allowed to recover the voluntarily paid fee. *Getto v. City of Chicago*, 86 Ill. 2d 39, 48 (1981); see also *Alvarez v. Pappas*, 229 Ill. 2d 217, 233-34 (2008) (holding that a taxpayer may not recover taxes voluntarily paid even if the taxing body illegally imposed or assessed the taxes unless the recovery is authorized by statute).

¶ 55   Whether the payment is voluntary presents a moot question if the legislature has provided a statutory remedy for the refund. *Scoa Industries, Inc. v. Howlett*, 33 Ill. App. 3d 90, 96 (1975); *Alvarez v. Pappas*, 229 Ill. 2d 217, 233-34 (2008). "Where *** the legislature has enacted a statutory remedy for a refund, a taxpayer who has voluntarily or involuntarily paid his taxes can recover them only by virtue of that statute." *Alvarez v. Pappas*, 374 Ill. App. 3d 39, 48 (2007).

¶ 56   Here, Schmidt claims that his payment of the $500 fee was compulsive and made under duress in that his vehicle was taken by Collinsville and he could not retrieve the vehicle until he paid that administrative impoundment fee. He argues that if he had refused to pay the fee, he would not have been able to get his vehicle back. In support of his argument, he cites Illinois cases where

18

businesses who were forced to pay money under duress to avoid "disastrous effects to business" could recover that money paid. See *Edward P. Allison Co. v. Village of Dolton*, 24 Ill. 2d 233, 235 (1962) (where the Village of Dolton threatened to shut down the electrical work that was being performed for the village by Edward P. Allison Co., Inc. unless the company paid certain license and inspection fees, the court concluded that the payment of the fees was involuntary); *Illinois Glass Co. v. Chicago Telephone Co.*, 234 Ill. 535, 546 (1908) (where Illinois Glass Company was overcharged for telephone services by the Chicago Telephone Company and did not discover the overcharged amounts until after the expiration of the applicable statute of limitations, Illinois Glass could not recover the wrongful amount paid, and the supreme court stated: "Although the defendant could not legally require payment of more than $125 per year for the business telephone, and the plaintiff was not legally bound to pay more, a larger sum was voluntarily paid without fraud, mistake of fact, or other ground for annulling the contract."). The payments in both cases were not made pursuant to, or otherwise governed by, a statute containing an administrative method to recover the fees. Thus, we find that Schmidt's argument lacks merit.

¶ 57 Conversely, as noted in *Scoa Industries, Inc.* and *Alvarez*, if there is a statutory remedy for a refund, the only mechanism to recover that fee is compliance with the statute. Section 10.12.040 of the Collinsville Municipal Code expressly provides an administrative remedy for contesting and potentially recovering the fee:

> "Within ten (10) business days after a motor vehicle is seized and impounded pursuant to this Chapter, the City shall issue a Notice of Hearing *** relating owner's right to request a hearing to challenge whether a violation of this Chapter has occurred. The owner of record seeking a hearing must file a written request for a hearing with the Chief of Police, or his designee, no later than twenty (20) business days after notice was mailed.

19

The hearing date must be scheduled not more than forty-five (45) business days after a request for a hearing has been filed. All interested persons shall be given a reasonable opportunity to be heard at the hearing.

If, after the hearing, the hearing officer determines by a preponderance of evidence that the motor vehicle was used in violation of this Chapter, then the hearing officer shall enter an order finding the owner of record of the motor vehicle civilly liable to the City for the applicable administrative fee.

If, after a hearing, the hearing officer does not determine by a preponderance of the evidence that the motor vehicle was used in such a violation, the hearing officer shall enter an order finding for the owner and for the return of the motor vehicle." Collinsville Municipal Code § 10.12.040(A), (B), (C) (eff. Dec. 13, 2011).

Accordingly, we agree with the trial court's conclusion that Schmidt's claim is barred by the voluntary payment doctrine and that dismissal was proper pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)).

¶ 58                                    III. CONCLUSION

¶ 59    For the foregoing reasons, we affirm the order of the Madison County circuit court dismissing this case pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (*id.* §§ 2-615, 2-619).

¶ 60    Affirmed.